KENNETH V. FROST, Plaintiff-Appellant, v. ROBAVE, INC., Defendant-Appellee (Jeffrey Roberts *et al.*, Defendants).

First District (2nd Division)   No. 1—97—2105

Opinion filed April 21, 1998.

530

Jeffrey M. Goldberg & Associates, Ltd., of Chicago (Jeffrey M. Goldberg and Geoffrey G. Johnson, of counsel), for appellant.

Cutler & Hull, of Chicago (David P. Cutler and Mark D. Andrews, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

An owner-employee of a business occasionally takes his dog with him to work. During these visits, the dog is given food and water. Under these circumstances, is the business entity a harborer or keeper of the dog and, therefore, liable for a dog attack occurring off the business premises after the business has closed for the day? The trial court said no and entered summary judgment in favor of the business. We agree.

Because the dog did not regularly stay or spend nights at the business, the employee took the dog to work for his personal convenience, the business did not in any way benefit from the dog's presence, and the business entity did not have care, custody, or control of the dog at the time of the attack, it is neither a keeper nor a harborer of the dog and is not liable at common law or under the Illinois Animal Control Act (510 ILCS 5/1 *et seq.* (West 1996) (Act)).

## BACKGROUND

Sometime around 8 p.m. on January 3, 1994, plaintiff, Kenneth Frost, took his German shepherd, Tristan, for an evening walk. He returned to the four-story mixed-use building at 1347 South Michigan Avenue, Chicago, Illinois, where he lived. He entered the building and started up a common stairwell to his third-floor loft apartment. At the same time, another third-floor tenant, Jeffrey Roberts, decided to go down to the lobby and check for mail. As Roberts opened his apartment door, his Akita, Jake, ran out and down the stairwell.

According to Roberts, he attempted to get Jake back into the apartment, but to no avail. As plaintiff reached the second-floor landing, Jake attacked, and the dogs began to scuffle. Plaintiff attempted to break up the fight and was bitten by Jake and severely injured.

Defendant Robave, Inc., is located on the second-floor landing where plaintiff was attacked. Robave is a clothing manufacturing business owned and operated by Roberts and his roommate, Nicholas Cave. At the time of the attack, Robave was closed for the day.

Roberts had purchased Jake and considered himself to be Jake's owner. Jake was initially purchased as a show dog but due to hocking of his legs he was unable to compete. At the time of the attack, Jake was a pet and lived with Roberts and Cave in their apartment. Roberts paid all expenses relating to Jake, including City of Chicago license, rabies license, food bills, pet supplies and toys, vet bills, boarding fees, and grooming bills. Robave did not in any way contribute to Jake's maintenance.

At times, Roberts would take Jake along when he worked at Robave. Although the parties dispute how often this would occur, it is undisputed that Jake was neither regularly housed nor did he regularly stay over night at Robave. It is also undisputed that Jake was not used to guard the Robave premises.

Plaintiff testified that he had seen Jake on the business premises on more than a 100 occasions at various times of the day and night. Plaintiff also submitted affidavits from several other tenants stating the dog was often seen on the business premises and that water and food bowls, and a cage, were present. Plaintiff also offered evidence that Jake had an unpredictable nature and had attacked other people in the past.

## PROCEDURE BELOW

Alleging negligence and violation of the Illinois Animal Control Act, plaintiff filed suit against Robave, Inc., Roberts, Cave, Central National Bank of Chicago, American National Bank and Trust Company of Chicago, Kenneth Goldberg, and C.M.C. Mgr. Co. Both banks have been dismissed pursuant to orders not relevant to this appeal. As best we can tell from the record, Roberts, Cave, Goldberg, and C.M.C. Mgr. Co. remain as defendants. This appeal only involves the entry of summary judgment in favor of Robave. We have jurisdiction pursuant to Rule 304(a). 155 Ill. 2d R. 304(a) (as amended, effective February 1, 1994).

## STANDARD OF REVIEW

■ The purpose of summary judgment is to determine whether any issues of fact exist, not to try any issues of fact. *Pyne v. Witmer,*

129 Ill. 2d 351, 357-58 (1989). Summary judgment is properly granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1996). In deciding whether summary judgment is proper, all documents on file are to be strictly construed against the movant and liberally construed in favor of the nonmovant. Only when the moving party's right to judgment is clear and free from doubt should summary judgment be granted. *Tersavich v. First National Bank & Trust*, 143 Ill. 2d 74, 80-81 (1991); *Rumford v. Countrywide Funding Corp.*, 287 Ill. App. 3d 330, 334 (1997). "If, upon examination of the record it can be fairly said that there does exist a triable issue of fact then the motion for summary judgment should be denied." *Ray v. City of Chicago*, 19 Ill. 2d 593, 599 (1960). If there is no dispute as to the material facts and the undisputed facts support only one inference, the only question is the legal effect of the facts. *Davies v. Grauer*, 291 Ill. App. 3d 863, 867 (1997). We review the grant of summary judgment *de novo* and may affirm on any basis evident in the record even though it is not the ground on which trial court based its ruling. *Smith v. Neumann*, 289 Ill. App. 3d 1056, 1063 (1997).

## I. ILLINOIS ANIMAL CONTROL ACT

### A. IN GENERAL

■ Plaintiff contends that summary judgment was improper because a reasonable inference could be drawn that Robave was a keeper or harborer of Jake and, therefore, an "owner" within the meaning of the Act. The Act provides:

> "If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." 510 ILCS 5/16 (West 1996).

"Owner" is defined as:

> "[A]ny person having a right of property in a dog or other animal, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premise occupied by him." 510 ILCS 5/2.16 (West 1996).

"Person" is defined as:

> "[A]ny person, firm, corporation, [or] partnership ***." 510 ILCS 5/2.17 (West 1996).

Statutes dealing with the liability of keepers or harborers of dogs

for injury or damage done by them are some of the oldest statutes enacted in the United States, extending back to the eighteenth century. Annotation, *Who "Harbors" or "Keeps" Dog Under Animal Liability Statute*, 64 A.L.R.4th 963, 969 (1988). Similar to statutes and municipal ordinances from around the country, the Illinois Act applies to legal owners as well as anyone who keeps or harbors a dog. The Act also includes three other categories of liability under the Act: one who has the dog in his care; one who acts as a custodian of the dog; and one who knowingly permits the dog to remain on premises occupied by him. Rather than being separate and distinct, it would appear that these three categories are examples of keeper or harborer or, at the least, usually would be encompassed within the term "keeping" or "harboring."

It has been stated:

> "The thrust of the Act is to encourage tight control of animals in order to protect the public from harm. The statutorily mandated liability provides first a strong incentive to prevent one's animals from harming others. Thus, the Act imposes penalties against not only an animal's legal owner, but also against anyone who places himself in a position of control akin to an owner. Only secondarily does the Act offer recompense to those injured." *Wilcoxen v. Paige*, 174 Ill. App. 3d 541, 543 (1988).

The question of ownership is often for the trier of fact. However, in appropriate cases, summary judgment is proper. *Eyrich v. Johnson*, 279 Ill. App. 3d 1067, 1071 (1996); *Severson v. Ring*, 244 Ill. App. 3d 453, 457 (1993); *Papesh v. Matesevac*, 223 Ill. App. 3d 189, 191 (1991); *Gahm v. Cave*, 194 Ill. App. 3d 954, 956 (1990).

The terms

> " '[k]eeping' or 'harboring' are sometimes used interchangeably, and there is some authority that they are equivalent terms \*\*\*, but they are more frequently distinguished, and it has been said that keeping is more than limited-time or limited-purpose harboring \*\*\*.
>
> Keeping has a proprietary aspect. Reference is sometimes made to the keeper's 'dominion' over the dog. Keeping is often defined in terms of the three Cs—that is, that keeping is exercising some measure of care, custody, or control over a dog \*\*\*.
>
> Harboring seems to lack the proprietary aspect of keeping. It is usually defined as sheltering or giving refuge to a dog \*\*\*." Annotation, *Who "Harbors" or "Keeps" Dog Under Animal Liability Statute*, 64 A.L.R.4th 963, 969 (1988).

In *Steinberg v. Petta*, 114 Ill. 2d 496 (1986), the Illinois Supreme Court addressed these classifications. "Harbor" is defined as " '[t]o afford lodging to, to shelter, or to give a refuge to.' " *Steinberg*, 114 Ill.

2d at 501, quoting Black's Law Dictionary 646 (5th ed. 1979). "Keeper" is defined as:

> " 'A harborer of a dog. [Citation.] Any person, other than owner, harboring or having in his possession any dog. [Citation.] One who, either with or without owner's permission, undertakes to manage, control, or care for it as dog owners in general are accustomed to do.' " *Steinberg*, 114 Ill. 2d at 501, quoting Black's Law Dictionary 780 (5th ed. 1979).

Although the *Steinberg* court did not draw a clear distinction between keeping and harboring, the opinion does emphasize that both require some level of care, custody, or control: "[h]arboring or keeping an animal therefore involves some measure of care, custody, or control, and it is in those senses that the terms 'harbor' and 'keep' have been construed." *Steinberg*, 114 Ill. 2d at 501.

Regarding an employer's liability for a dog at the work place, the following is particularly applicable to the instant case:

> "When an employee brings his or her dog onto the employer's premises, the first question is whether the dog is there for the employee's convenience or for the employer's benefit. If for the employer's benefit, the employer is probably the dog's keeper \*\*\*. If for the employee's convenience, the employer is probably not the dog's keeper \*\*\*." Annotation, *Who "Harbors" or "Keeps" Dog Under Animal Liability Statute*, 64 A.L.R.4th 963, 971 (1988).

## B. KEEPER

■ To establish that one is a keeper of an animal it must be shown that the person had control over the animal at the time of the injury or immediately prior to the injury. In describing this necessary element of control, courts have also used the terms "custody," "dominion," and "management." That the "Act contemplates some level of care, control, or custody \*\*\* is an effort by the legislature to place the burden on parties who might best be in a position to prevent the animal from causing harm. Extending liability to a noncustodial [party] would seemingly fly in the face of such a policy." *Papesh v. Matesevac*, 223 Ill. App. 3d 189, 192 (1991). " 'The statute should not be extended beyond its reasonable scope to punish one who is not in control of the animal.' " *Heyen v. Willis*, 94 Ill. App. 2d 290, 295 (1968), quoting *Reuter v. Swarthout*, 182 Wis. 453, 456, 196 N.W. 847, 848 (1924).

■ Where a legal owner has custody and control over a dog, he or she is also its keeper. However, when custody and control are relinquished to another, that person becomes the keeper subject to the will of the owner. Thus, a nonowner's control over the dog and resultant status as a keeper are of a temporal nature. Although not

binding on us, we nevertheless find persuasive the following analysis from the Supreme Court of Wisconsin from its detailed discussion of "Who is A 'Keeper' of a Dog?":

> " 'Where the keeper is not the owner, it may be assumed, as a general proposition, that the dominion or authority of the keeper over the dog is a limited one, subject to be terminated at any time by the owner \*\*\*. *The moment [the owner removes the dog from the custody of the keeper]*, the dual authority \*\*\* is merged in the owner, and at that very moment the *keeper's rights and responsibilities concerning the dog are at an end.*' " (Emphasis in original.) *Armstrong v. Milwaukee Mutual Insurance Co.*, 202 Wis. 2d 258, 266, 549 N.W.2d 723, 727 (1996), quoting *Janssen v. Voss*, 189 Wis. 222, 224, 207 N.W. 279, 280 (1926).

The focal point is on the time of the incident and not on some other time period. See *Armstrong*, 202 Wis. 2d at 266, 549 N.W.2d at 727 ("[I]t is clear that a person's status as keeper can change over time, with the focal point being the time of the injury"); *Bevin v. Griffiths*, 44 Ohio App. 94, 98, 184 N.E. 401, 403 (1932) (focus on time of injury).

In accord with this principal, Illinois courts have consistently held that a person's status as keeper is dependent upon control over the animal at the time of the injury. See *Steinberg v. Petta*, 114 Ill. 2d 496, 502-03 (1986) (landlord not liable for injury caused by tenant's dog); *Eyrich v. Johnson*, 279 Ill. App. 3d 1067, 1070 (1996) (owner of boar not liable for injury to farmhand whose job was to care for and feed the boar); *Hassell v. Wenglinski*, 243 Ill. App. 3d 398, 400, 402 (1993) (dog owner not liable for injuries to person who was walking dog as favor to the owner); *Papesh*, 223 Ill. App. 3d at 191-92 (mother who purchased dog for her son not liable for injuries occurring after son and dog moved to father's home); *Gahm v. Cave*, 194 Ill. App. 3d 954, 956 (1990) (landowner not liable for injuries caused by heifer that escaped as it was being unloaded from a truck); *Clark v. Rogers*, 137 Ill. App. 3d 591, 593 (1985) (owner of horse and stable owner not liable for injuries to horse trainer occurring after trainer took the horse from the barn and attempted to mount it); *Heyen*, 94 Ill. App. 2d at 295-96 (landowner not liable for injuries caused by tenant's bull).

■ Applying these principles to the instant case, it is clear that Robave was not Jake's keeper. Other than Roberts, no one from Robave exercised custody or control over Jake. Roberts took the dog for his own convenience, and Jake's presence did not in any way benefit Robave. See Annotation, *Who "Harbors" or "Keeps" Dog Under Animal Liability Statute*, 64 A.L.R.4th 963, 979 (1988).

Even assuming, *arguendo*, that Robave could somehow be

construed to be Jake's keeper when he was on the premises, the relationship ended when the business closed and Roberts took the dog back to his apartment. At this time, any responsibility Robave may have had ended. See *Clark*, 137 Ill. App. 3d at 593. Again, the focus is on the time of the injury. Here, Jake had been in Roberts' apartment for some four hours prior to the attack.

■ We also reject plaintiff's *respondeat superior* contention that custody and control of Jake can be imputed to Robave because Roberts was its agent. Plaintiff contends that because Roberts, Cave, and Robave shared a single, common mail box, Roberts was acting on behalf of Robave when he went for the mail because he would retrieve or, at least, check for Robave's mail in addition to his own. Thus, according to plaintiff, Roberts was Robave's agent when he opened the door and his custody and control of Jake are imputed to the principal Robave.

Initially, we note that plaintiff does not cite any authority for this novel contention. Moreover, we find without merit plaintiff's conclusion that Roberts was Robave's agent at the time he opened the door. On the contrary, Roberts was a private person in his private apartment. The mere fact that Roberts was leaving his apartment for a business purpose when Jake escaped does not change the result. Additionally, Roberts did not intentionally take Jake along. Rather, Jake ran out when the door was opened.

Finally, and most importantly, we decline to extend keeper status to an employer where an employee for his own personal convenience takes his dog on a business-related errand. Whether the dog is with the employee on a business errand or taken to the business premise, the test should be the same: was the dog's presence merely a personal convenience to the employee or was it a benefit to the employer? See Annotation, *Who "Harbors" or "Keeps" Dog Under Animal Liability Statute*, 64 A.L.R.4th 963, 971, 979 (1988). We believe this interpretation comports with the notion that because the Act represents a departure from the common law, it should be narrowly construed in favor of those who are subject to its operation. *Harris v. Walker*, 119 Ill. 2d 542, 547 (1988); *Docherty v. Sadler*, 293 Ill. App. 3d 892 (1997).

## C. HARBORER

■ Unlike keeping, which refers to custody and control, harboring means to " 'afford lodging to, to shelter, or to give a refuge to.' " *Steinberg v. Petta*, 114 Ill. 2d 496, 501 (1986), quoting Black's Law Dictionary 646 (5th ed. 1979). However, "merely allowing a dog temporarily on one's premises does not make the premises owner the dog's keeper or harborer under [the] statute." Annotation, *Who "Harbors" or*

*"Keeps" Dog Under Animal Liability Statute*, 64 A.L.R.4th 963, 979 (1988). Nor does casual feeding or watering necessarily equate to harboring. *McEvoy v. Brown*, 17 Ill. App. 2d 470, 479 (1958). Rather, harboring is limited to situations where one " '*provide[s] food and shelter of at least a semi-permanent nature.*' " (Emphasis in original.) *Thompson v. Dawson*, 136 Ill. App. 3d 695, 699 (1985), quoting 3A C.J.S. *Animals* § 205(b), at 710 (1973). An employer that permits employees to bring dogs onto the employer's premises will only be found to be a harborer where the dog's presence was for the employer's benefit rather than the employee's convenience. Annotation, *Who "Harbors" or "Keeps" Dog Under Animal Liability Statute*, 64 A.L.R.4th 963, 991 (1988).

In the instant case, Jake was on the Robave premises solely as a personal convenience to Roberts. Any food that was given to Jake was provided by Roberts. Robave did not in any way contribute to the dog's upkeep. Nor is there any evidence that Jake's presence benefited Robave. He was not used to guard or protect the premises. The factual scenario here is dissimilar to that in *Edelstein v. Costelli*, 85 Ill. App. 2d 81 (1967) (abstract of op.), where a building owner was found to be a harborer. In *Edelstein,* defendant owned a building and leased half of it to the dog's owner. Defendant used the other half for himself. The evidence further showed that the dog was allowed to roam throughout the building and was used to guard or protect the entire premises. See also *Steinberg*, 114 Ill. 2d at 503 (citing to and distinguishing *Edelstein*).

It is clear that Robave did not harbor Jake. In ruling as we do, we reject plaintiff's argument that the close relationship between Robave and Roberts should result in the entities being treated as one.

## II. COMMON LAW

■ That Robave is not Jake's legal owner or an "owner" pursuant to the Act does not necessarily preclude common law tort liability in negligence or wilful conduct. *Severson v. Ring*, 244 Ill. App. 3d 453, 458 (1993) (property owner who did not legally own, keep, or harbor dog could nevertheless be liable in negligence if aware of dog's vicious propensities). Accord *Lucas v. Kriska*, 168 Ill. App. 3d 317, 320 (1988).

However, it is axiomatic that a cause of action in negligence must allege duty. Facts giving rise to a duty are where defendant owned, controlled, or otherwise had custody of a dog, or where defendant is legally responsible for the premises where the injury occurred. One may also incur liability where he or she antagonizes or provokes a dog into attacking.

538

In the instant case, we have concluded that Robave did not legally own or have custody or control of Jake. Nor did the attack occur on Robave's premises. The record is devoid of any facts that would impose a duty on Robave with respect to Jake. As such, there can be no liability in negligence or wilful conduct.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

McNULTY, P.J., and TULLY, J., concur.