# Illinois Official Reports

## Appellate Court

---

### *Whitten v. Luck*, 2014 IL App (5th) 120513

---

| | |
|---|---|
| Appellate Court Caption | DOUGLAS R. WHITTEN, Plaintiff-Appellant, v. DONNA LUCK and BILL WARREN, Defendants-Appellees. |
| District & No. | Fifth District<br>Docket No. 5-12-0513 |
| Filed | March 13, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff motorcyclist suffered when a dog ran into his path and caused him to crash, the trial court's entry of summary judgment for the owners of the farmhouse rented by the dog's owner was upheld on appeal, since the record showed that plaintiff's action against the dog's owner was dismissed after he obtained a discharge in bankruptcy, and when plaintiff pursued relief against the owners of the house under the Animal Control Act, the trial court found that defendants were not owners of the dog for purposes of liability under the Act, because they did not exercise care, control, or custody of the dog, even though they prohibited the owner from keeping the dog in the house, but allowed him to keep the dog in the barn. |
| Decision Under Review | Appeal from the Circuit Court of Montgomery County, No. 09-L-30; the Hon. Douglas L. Jarman, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal | Randall A. Wolter, of Wolter, Beeman & Lynch, of Springfield, for appellant.

Edward T. Graham, Jr., of Beavers, Graham & Calvert, of Taylorville, for appellees.

Panel | PRESIDING JUSTICE WELCH delivered the judgment of the court, with opinion.
Justice Spomer concurred in the judgment and opinion.
Justice Goldenhersh dissented, with opinion.

**OPINION**

¶ 1    The plaintiff, Douglas R. Whitten, appeals from an order of the circuit court of Montgomery County entering summary judgment in favor of the defendants, Donna Luck and Bill Warren. For the reasons which follow, we affirm the decision of the circuit court.

¶ 2    On June 2, 2009, the plaintiff was injured while riding his motorcycle on Rainmaker Trail near Butler, Illinois, when a black Labrador retriever ran into his path, causing him to lose control of his motorcycle and sustain injuries. Rainmaker Trail runs adjacent to farm property owned by the defendants. The defendants are a brother and sister who inherited the house and the 75-acre farm on which it sits when their mother died in 2008. The dog was owned by Daniel Lesko who, along with his girlfriend Meghan Ritzel, was renting a home on the 75-acre tract from the defendants. Ritzel is the granddaughter of the defendant Luck.

¶ 3    All parties agreed that Lesko and Ritzel began renting the house in May of 2009, but a copy of the lease in the record before us indicates that the lease was not signed until July 20, 2009, over a month after the accident in question. In any event, pets were not allowed in the house, and both Lesko and Ritzel were aware of this. The signed lease specifically states, "No Pets allowed inside house, Outside Pets ONLY."

¶ 4    The defendants were aware that Lesko owned a dog. Lesko was upset he could not keep the dog in the house because the dog was previously an inside dog. When he moved into the house, Lesko initially tried keeping the dog in the garage attached to the home, but that did not work out well. The defendants gave Lesko permission to keep the dog in a barn located on the 75-acre farm. The leased premises included the house and the surrounding yard, but the barn was not part of the lease agreement. In her deposition, Luck testified that her understanding of the lease was that pets could be on the leased property as long as they were contained while Lesko and Ritzel were gone and they were not kept in the house. She admitted that Lesko had her permission to keep the dog in the barn even though she still owned the barn and that she did not charge them any extra rent for the use of the barn. The dog lived and slept inside a pen inside the barn until he was let out by either Lesko or Ritzel. The barn was also used to store farm equipment and hay and was also used by a farmer who rented land from the defendants.

- 2 -

¶ 5        Lesko provided all care for the dog. He fed the dog, trained it, played with it, groomed it, and paid all veterinary bills. Neither of the defendants ever provided any care for the dog. On the day in question, Lesko fed and watered the dog and contained it in the pen inside the barn. No other person had contact with the dog, except possibly Ritzel.

¶ 6        After the accident, the plaintiff filed an action against both Lesko and the defendants, alleging: (1) common law negligence and (2) liability pursuant to the Animal Control Act (Act) (510 ILCS 5/1 to 35 (West 2008)). The plaintiff later voluntarily dismissed all claims based upon common law negligence, as well as his claim against Lesko under the Act because Lesko filed bankruptcy and a discharge was granted. The only charge remaining was the statutory charge against the defendants pursuant to the Act. Both the plaintiff and the defendants filed motions for summary judgment. After a hearing, the trial court entered summary judgment in favor of the defendants and against the plaintiff, specifically stating as follows:

> "The court rejects the claim that the [d]efendants harbored the dog. There is no dispute that Mr. Lesko was the only one to exercise care, custody or control over the dog. He fed and watered the dog and was responsible for his wellbeing [*sic*]. Defendants exercised no care, custody or control over the dog. The only authority [d]efendants exercised over the dog was to direct in the lease that the dog could not be in the house and then to subsequently permit Mr. Lesko to keep the dog in the barn. [Citation.]

> The claim that [d]efendants were owners because they permitted the dog to remain on premises occupied by them must also be rejected. The barn was not part of the premises demised in the lease. There is no dispute that the barn was used to store old farm equipment. Mr. Lesko's use of the barn was strictly for his benefit, and not for the benefit of [d]efendants. When [d]efendants permitted Mr. Lesko to use the barn for his dog, that portion of the barn became an appurtenance to the leased premises and [d]efendants no longer occupied it."

The plaintiff appeals.

¶ 7        The issue raised in this appeal is whether the trial court erred in entering summary judgment in favor of the defendants after finding that as a matter of law the defendants were not owners of the dog pursuant to the Act. First, the plaintiff argues that pursuant to the Act the defendants are owners of the dog because they harbored the animal. The plaintiff points out that the dog lived in the defendants' barn and freed itself from that barn the day the plaintiff was injured. According to the plaintiff, the defendants had full control over where the dog lived and slept and this is sufficient to establish the requisite degree of care, custody, or control to extend liability to the defendants as owners under the Act. Second, the plaintiff contends that the defendants are owners of the dog because they knowingly permitted the dog to remain on premises which they owned and occupied, *i.e.*, the barn. The defendants respond that summary judgment was properly granted in their favor because at the time and place of the accident described in the plaintiff's complaint, the defendants were absentee landlords of the premises leased to Lesko and Ritzel, and they did not own, possess, or have the right to care for or control the dog that allegedly caused the plaintiff's accident. We agree with the defendants and find that the trial court did not err in granting summary judgment in their favor.

¶ 8        Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Frost v. Robave, Inc.*, 296 Ill. App. 3d 528, 532 (1998). In determining whether summary judgment is proper, the court must strictly construe all documents on file against the moving party. *Id.* The question of ownership is normally for the trier of fact; however, in appropriate cases, summary judgment is proper. *Papesh v. Matesevac*, 223 Ill. App. 3d 189, 191 (1991)*.* In an appeal from a summary judgment ruling, review is *de novo. Frost*, 296 Ill. App. 3d at 532.

¶ 9        The Act provides that if a dog or another animal injures a person, "the owner of such dog or other animal is liable in civil damages to such person for the full amount of the injury proximately caused thereby." 510 ILCS 5/16 (West 2008). The Act defines "owner" as "any person having a right of property in an animal, or who keeps or harbors an animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog to remain on any premises occupied by him or her." 510 ILCS 5/2.16 (West 2008). While the terms "keeps" and "harbors" are not defined by the Act, the terms should be given their plain and ordinary meanings. *Steinberg v. Petta*, 114 Ill. 2d 496, 500-01 (1986). In *Steinberg*, our Illinois Supreme Court explained:

> "The verb '[h]arbor' means '[t]o afford lodging to, to shelter, or to give a refuge to.' (Black's Law Dictionary 646 (5th ed. 1979).) Black's Law Dictionary defines '[k]eeper of dog' as: 'A harborer of a dog. [Citation.] Any person, other than owner, harboring or having in his possession any dog. [Citation.] One who, either with or without owner's permission, undertakes to manage, control, or care for it as dog owners in general are accustomed to do.' (Black's Law Dictionary 780 (5th ed. 1979).) See also 4 Am. Jur. 2d *Animals* sec. 92 (1962); 3A C.J.S. *Animals* sec. 205 (1973)." *Steinberg*, 114 Ill. 2d at 501.

¶ 10        Therefore, harboring or keeping an animal involves some measure of care, custody, or control. *Id.* Harboring is limited to situations where an individual provides food and shelter of at least a semipermanent nature. *Frost*, 296 Ill. App. 3d at 537. "To establish that one is a keeper of an animal it must be shown that the person had control over the animal at the time of the injury or immediately prior to the injury." *Id.* at 534.

¶ 11        Our supreme court in *Steinberg* held that an absentee landlord did not harbor a tenant's dog within the meaning of the Act because the landlord "did not have the tenants' dog in his care, custody, or control; he simply allowed the tenants to have a pet on the premises, and by no fair inference can he be deemed to have harbored or kept the animal." *Steinberg*, 114 Ill. 2d at 502. *Steinberg* involved an injury that occurred to the plaintiff when a dog escaped from a fence in the backyard of a rental house. *Id.* at 498. The owners of the dog occupied the ground floor of the two-story rental house. *Id.* The property manager, who collected the rent for the landlord, gave the tenants permission to keep the dog on the premises, which included an area of the backyard, and permission to erect a fence in the backyard to contain the dog. *Id.* The landlord did not know about the fence or the presence of the dog on the rental property. *Id.* at 499. The plaintiff argued that the following made the landlord an owner of the dog: the landlord benefitted from the erection of the fence, as the property owner, and the presence of the dog because it provided additional security for the premises; the property manager relayed the neighbors' complaints about the dog to the tenants; and the landlord retained control over the

- 4 -

backyard where the dog was kept. *Id.* at 502. The court concluded that the landlord was not an owner of the dog pursuant to the Act, finding that any benefit resulting from the erection of the fence was merely incidental to the tenants' activity and that the property manager's actions of relaying the complaints to the tenants did not establish the degree of control contemplated by the statute. *Id.* The court stated that the "evidence presented at trial established nothing more than that the defendant, acting through his agent, permitted the tenants to keep a dog on the premises, which included the area of the backyard." *Id.*

¶ 12     Here, the plaintiff first argues that the defendants were owners of the dog because they harbored the animal by providing its shelter. In support of this position, the plaintiff points to the following evidence: the structure where the dog was housed was not part of the leased premises; the dog was kept in the barn for the defendants' benefit because the defendants did not want the dog in the house; and the defendants had full control over where the dog lived and slept and the structure that was meant to contain him. The plaintiff also argues that the defendants were owners of the dog because they knowingly permitted the dog to remain on premises that they owned and occupied, *i.e.*, the barn. In support of this position, the plaintiff points to the following facts: the barn was not leased to Lesko and Ritzel; the dog was housed in the barn at the defendants' direction; the defendants occupied the barn as they stored farm-related equipment and hay in the barn; and the situation was permanent.

¶ 13     The trial court determined that the defendants were not owners of the dog under the Act because they exercised no care, custody, or control over the dog. The court rejected the argument that the defendants harbored the dog, finding that the "only authority [d]efendants exercised over the dog was to direct in the lease that the dog could not be in the house and then to subsequently permit Mr. Lesko to keep the dog in the barn." The court further rejected the argument that the defendants were owners because they permitted the dog to remain on premises occupied by them. The court noted that Lesko's use of the barn was strictly for his benefit and not for the benefit of the defendants. With regard to the barn not being part of the leased premises, the trial court determined that "[w]hen [d]efendants permitted Mr. Lesko to use the barn for his dog, that portion of the barn became an appurtenance to the leased premises and [d]efendants no longer occupied it." We agree with the findings of the trial court.

¶ 14     Like the defendant in *Steinberg*, the defendants in this case did not live on the leased premises. Luck testified that the leased premises consisted of the house and the surrounding yard. Pursuant to the lease agreement, pets were restricted to the outside. After unsuccessfully attempting to house his dog in the garage, Lesko received permission from the defendants to house the dog in a portion of the barn. The only restriction in the lease agreement concerning dogs was that dogs were to remain outside. The lease agreement did not say that the dog was required to be housed in the barn. Lesko could have chosen to house the dog elsewhere. Like the trial court, we conclude that the defendants did not have the requisite care, custody, or control over the animal because the only authority that the defendants exercised over the dog was to prohibit it from living in the house and then to subsequently allow Lesko the use of the barn. The defendants did not feed, water, or otherwise care for the dog while it lived in the barn. We also agree with the trial court that Lesko's use of the barn was for his own benefit because he was allowed to live in the leased premises and still keep his dog. Although Luck admitted being at the 75-acre farm numerous times after Lesko and Ritzel started renting the house and that the defendants had stored farm-related equipment in the barn, the defendants

did not have any right to care for or control over the animal. Moreover, the fact that the defendants might have provided the pen inside the barn from which the dog escaped does not establish the degree of control contemplated by the statute. Like the defendant in *Steinberg*, the defendants here merely allowed the tenants to have a dog on the premises and therefore cannot be deemed to have harbored or kept the animal. We recognize that the plaintiff cites *Bailey v. DeSanti*, 414 A.2d 1187 (Conn. Super. Ct. 1980), a Connecticut Superior Court case, for support of his position that the defendants were owners of the dog under the Act. However, we note that this case is not binding on this court and we find it unpersuasive under the circumstances presented in light of *Steinberg*. Under these circumstances, we find that the trial court did not err in entering summary judgment in favor of the defendants.

¶ 15    For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed.

¶ 16    Affirmed.

¶ 17    JUSTICE GOLDENHERSH, dissenting.

¶ 18    I respectfully dissent. It is my position that the circuit court erred in granting summary judgment for defendants as there were genuine issues of material fact.

¶ 19    In *Steinberg v. Petta*, 114 Ill. 2d 496, 501 N.E.2d 1263 (1986), relied upon by the majority, the dog escaped from a fence that was erected in the backyard of the rental house. The property manager who collected rent for the landlord gave the tenant permission to erect a fence in the backyard. The landlord was not even aware that a fence had been erected. *Steinberg*, 114 Ill. 2d at 499, 501 N.E.2d at 1264. I find the instant case is distinguishable from *Steinberg* for at least three reasons.

¶ 20    First, defendants in the instant case were not absentee landlords. Donna Luck admitted to being at the 75-acre farm numerous times after Lesko and Ritzel started renting the house, and defendants were well aware that a dog was living on the premises. Second, defendants, not the tenant Lesko, actually determined where the dog should be kept. Defendants did not simply give Lesko permission to use the barn; Donna Luck actually directed Lesko to use the barn to house the dog. Third, the barn in which the dog was being housed was not even being rented by Lesko and Ritzel.

¶ 21    Here, the lease provided that the dog could not be kept in the house. Lesko wanted to keep the dog in the house, but that was not allowed under the terms of the lease. Lesko tried keeping the dog in the garage, but for whatever reason, that did not work out well. Donna Luck then told Lesko he could keep the dog in a barn located on the property. The barn was not part of the leased premises. Luck testified via deposition as follows:

> "Q. [Attorney for plaintiff:] Do you know where the dog was kept?
>
> A. In a pen in the barn.
>
> Q. Is that on the property you were leasing at 97 Rainmaker Trail?
>
> A. Yes.
>
> Q. And did you own the barn?
>
> A. Yes.

Q. Was that part of the property you leased?

A. No. Well, I guess.

Q. When you rented the property to [Ritzel] and [Lesko] did that include the barn?

A. No.

Q. So what was leased, just the residence?

A. More or less, yes.

Q. More or less. What more or less, you got to tell me.

A. Well, the yard."

Under these circumstances, it is clear that defendants maintained control over the barn and allowed the dog to be housed in property owned by them that was separate from the property leased by Lesko and Ritzel.

¶ 22 Moreover, there is a question of who provided the pen inside the barn from which the dog escaped. Lesko testified as follows in his deposition:

"Q. [Attorney for plaintiff:] How did the dog get out on June 2nd of '09?

A. It looked like he pried the bottom up. Like it was just like the regular mesh fence and it looked like one of the metal pieces holding it together was pried loose.

Q. I don't have a picture of the pen. Tell me what the pen looked like and what it was made of.

A. Basically just like those metal chain fences that you see only about twice the height. I think it was about six foot high. It was, we were able to flip the part that he messed up upside down after the event and use it again.

Q. So you're talking about like a standard chain link with squares a couple inches wide?

A. Yes.

Q. Was it purchased as a dog run or something somebody put together?

A. I believe it was originally purchased for dogs."

Lesko explained the dog had never broken lose prior to the date in question, "but he hadn't spent that much time out in a cage before either." From the above, it is not clear that Lesko purchased the pen. The pen may have been purchased by defendants. The record before us simply does not establish if the pen was already in the barn when Donna Luck told Lesko he could keep the dog in the barn or if Lesko provided the pen.

¶ 23 Both parties have cited numerous cases in support of their respective positions. I have reviewed those cases and find none are directly on point. I point out, however, that the question of ownership, specifically harboring or keeping, is generally a question of fact for the trier of fact. *Thompson v. Dawson*, 136 Ill. App. 3d 695, 699-700, 483 N.E.2d 1072, 1075 (1985). From the record before us, I believe that the trial court erred in finding as a matter of law that defendants did not exercise the requisite degree of custody or control over the black Labrador retriever that was the cause of plaintiff's accident. Defendants determined where the dog was to be sheltered and provided that shelter. Defendants permitted the dog to remain on premises owned by them that were not part of the lease agreement. Under these circumstances, the trial court erred in entering summary judgment in favor of defendants. The evidence presents a question of fact whether the defendants exercised the requisite degree of custody and control

over the dog to bring them within the definition of "owner" under the Act. Accordingly, I would reverse and remand for further proceedings.