FILED
12/15/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 10, 2020 Session

## ZARMINA FOLAD ET AL. v. QUILLCO, LLC D/B/A THE BOTTLE SHOP AT MCEWEN ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 2018-22  Joseph A. Woodruff, Judge**

———————————————————

**No. M2020-00628-COA-R3-CV**

———————————————————

This appeal concerns injuries allegedly caused by dogs running loose and the application of Tennessee Code Annotated section 44-8-413.  Under this statute, the "owner of a dog has a duty to keep that dog under reasonable control at all times, and to keep that dog from running at large."  Tenn. Code Ann. § 44-8-413(a)(1).  "A person who breaches that duty is subject to civil liability for any damages suffered by a person who is injured by the dog while in a public place or lawfully in or on the private property of another."  *Id.*  The trial court granted summary judgment in favor of the Appellee/Defendant, an LLC, where the dogs had been kept prior to the incident, as to an alleged violation of section 44-8-413, holding that the Appellee/Defendant never assumed ownership of the dogs at the center of this dispute.  For the reasons stated herein, we reverse the trial court's entry of summary judgment on this issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in part, Affirmed in part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined

Stanley A. Davis, Nashville, Tennessee, for the appellants, Zarmina Folad, and Tony Folad.

E. Reynolds Davies, Jr., Nashville, Tennessee, for the appellee, QUILLCO, LLC, d/b/a The Bottle Shop at McEwen.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

On February 2, 2017, Zarmina Folad was allegedly injured as a result of the conduct

of two dogs when she and her daughter were on a walkway adjacent to a Whole Foods store located on McEwen Drive in Williamson County. The dogs at issue had gotten out the rear door from a nearby business known as "The Bottle Shop at McEwen,"[1] which is operated by Quillco, LLC ("Quillco"). Lisa Coviello has 100% ownership of Quillco.

On January 17, 2018, Ms. Folad and her husband, Tony, filed suit against Quillco and Lisa Coviello and her husband, David, as a result of the February 2017 incident. According to the allegations therein,

> [a]s [Ms. Folad and her daughter] were walking [on the date of the incident], the dogs, Brownie and Conor, were unrestrained and <u>allowed to roam at large</u> and were in the grass on the embankment barking at [Ms. Folad] in attack mode. Brownie, was barking aggressively and running toward [Ms. Folad]. [Ms. Folad's] daughter was crying and scared by the dogs' aggressive and threatening behavior. [Ms. Folad] picked up stones and threw them to distract the dogs so her daughter could get away. Then as [Ms. Folad] ran away to avoid being attacked, the aggressive dog ran toward her and she fell down injuring her hip and as she was falling, her arm hit a chair and was broken resulting in multiple surgeries.

(emphasis in original) There does not appear to be any dispute that the dogs that are the subject of this case are the property of the Coviellos. Although the claims against the Coviellos were later dismissed pursuant to an agreed order, the lawsuit against Quillco remained pending.

On January 21, 2020, Quillco filed a motion to dismiss and/or for summary judgment regarding the claims it perceived to be asserted against it. In a memorandum filed in support of its motion, Quillco argued, among other things, that it could not be held directly liable under Tennessee Code Annotated section 44-8-413 because that statute imposes civil liability on the "owner" of a dog. According to Quillco, it was not the owner of the dogs at issue. At best, it contended, "Plaintiffs may argue that on the day at issue in 2017 the business had temporary custody or control of the animals." Such alleged "temporary" control is, as Quillco observed, insufficient for the imposition of liability under Tennessee Code Annotated section 44-8-413. *See* Tenn. Code Ann. § 44-8-413(e)(1) (noting that an owner is not one "who, at the time of the damage, is temporarily harboring, keeping, or exercising control over the dog"). In response to Quillco's motion, the Folads pointed the trial court to evidence in the record reflecting that the dogs' presence in The Bottle Shop on the date of the incident was not an isolated occurrence and that the dogs had a close relationship with the store and were actually utilized for marketing of the business.

---

[1] The Bottle Shop sells wine, spirits, beer, and lifestyle items such as glassware.

On April 21, 2020, the trial court entered its "Memorandum and Order," wherein it adjudicated Quillco's motion for relief. Although the trial court correctly observed that the Folads appeared to dispute the issue of the dogs' ownership within the meaning of Tennessee Code Annotated section 44-8-413, it ultimately found their arguments unavailing. In pertinent part, the court held as follows in dismissing a claim for Quillco's alleged violation of the statute:

> In deciding this motion, the Court will take all facts and their associated reasonable inferences in favor of Folad as the non-moving party. Even so, the Court finds as a matter of law that Quillco does not own the dogs within the meaning of the statute. At the time of Folad's injury, the dogs were present at the store with their legal owner, Lisa Coviello. At all relevant times, the dogs remained under the care, custody, and control of Lisa Coviello. Neither the dogs' physical presence in the store nor their apparent presence in the store's promotional materials was sufficient to remove the dogs from the care, custody, and/or control of their owner Lisa Coviello and place the dogs under the care, custody, and/or control of the LLC. There is no evidence in the record which indicates that the dogs were engaged in any activity which would benefit or further Quillco's LLC business at the time of Folad's injury. As a matter of law, Lisa Coviello, in her capacity as an individual, owned Brownie and Conor at the time of Folad's injury. At no relevant time did Quillco, as the LLC, assume ownership of the dogs.

> Notably, the statute's definition of "owner" is prefaced with the phrase, "unless context otherwise requires." Thus, even if Folad had demonstrated a genuine dispute of material fact as to whether Quillco may be considered a statutory owner, the Court is empowered by the legislature to take into account the specific factual circumstances of this case. The factual circumstances of this case, even considered in the light most favorable to Folad, require the Court to conclude that Lisa Coviello owned the dogs in her capacity as an individual.

(internal footnotes omitted) The trial court's order further held that all other claims that appeared to be raised by the Folads, such as a claim for premises liability, should be dismissed. As to the premises liability claim specifically, the trial court noted that it was undisputed that "Folad was not a customer of the business, never entered premises which were leased, owned, or controlled by the business, and was not injured on premises which were leased, owned, or controlled by the business." The Folads subsequently filed a timely notice of appeal in this Court.

## STANDARD OF REVIEW

At issue in this appeal is whether the trial court's grant of summary judgment in

Quillco's favor was proper. In reviewing that question, we are guided by the following law:

> A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citation omitted). When the moving party does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Because resolving a motion for summary judgment is a question of law, we review the trial court's disposition on the issue *de novo* without a presumption of correctness. *Martin*, 271 S.W.3d at 84 (citation omitted). Indeed, we must make a fresh determination that the requirements of Rule 56 have been satisfied in each case. *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009) (citations omitted). In assessing the propriety of the motion, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Martin*, 271 S.W.3d at 84 (citation omitted).

*Bobo v. City of Jackson*, 511 S.W.3d 14, 18-19 (Tenn. Ct. App. 2015).

## DISCUSSION

Although the Folads denominate several purported "issues" for review in their brief on appeal, many of the cited concerns appear to be overlapping and the precise nature of the Folads' appellate challenge is, in places, unclear. In this respect, we observe that several of the trial court's specific rulings do not appear to be directly challenged in the Folads' brief, but the Folads do place much attention on the evidence in the record pertaining to the relationship Quillco has with the dogs at issue in this case.

As was made clear to us from the oral argument of this matter, the Folads present emphasis on appeal is a challenge to the trial court's summary dismissal of a claim for civil liability under Tennessee Code Annotated section 44-8-413. This statute, which governs injuries caused by dogs, substantively provides as follows:

(a)(1) The owner of a dog has a duty to keep that dog under reasonable control at all times, and to keep that dog from running at large. A person who breaches that duty is subject to civil liability for any damages suffered by a person who is injured by the dog while in a public place or lawfully in or on the private property of another.

(2) The owner may be held liable regardless of whether the dog has shown any dangerous propensities or whether the dog's owner knew or should have known of the dog's dangerous propensities.

(b) Subsection (a) shall not be construed to impose liability upon the owner of the dog if:

(1) The dog is a police or military dog, the injury occurred during the course of the dog's official duties and the person injured was a party to, a participant in or suspected of being a party to or participant in the act or conduct that prompted the police or military to utilize the services of the dog;

(2) The injured person was trespassing upon the private, nonresidential property of the dog's owner;

(3) The injury occurred while the dog was protecting the dog's owner or other innocent party from attack by the injured person or a dog owned by the injured person;

(4) The injury occurred while the dog was securely confined in a kennel, crate or other enclosure; or

(5) The injury occurred as a result of the injured person enticing, disturbing, alarming, harassing, or otherwise provoking the dog.

(c)(1) If a dog causes damage to a person while the person is on residential, farm or other noncommercial property, and the dog's owner is the owner of the property, or is on the property by permission of the owner or as a lawful tenant or lessee, in any civil action based upon such damages brought against the owner of the dog, the claimant shall be required to establish that the dog's owner knew or should have known of the dog's dangerous propensities.

(2) The element of proof required by subdivision (c)(1) shall be in addition to any other elements the claimant may be required to prove in order to establish a claim under the prevailing Tennessee law of premises liability or comparative fault.

(d) The statute of limitations for an action brought pursuant to this section shall be the same as provided in § 28-3-104, for personal injury actions.

Tenn. Code Ann. § 44-8-413.

The pivotal question here is whether the evidence at summary judgment was sufficient to establish that Quillco was *not* an owner of the dogs at issue within the meaning of the statute. Although the trial court answered this question in the affirmative, we respectfully disagree for the reasons set forth below.

- 5 -

Under the statute, an "owner" is defined as a person who

> at the time of the damage caused to another, regularly harbors, keeps, or exercises control over the dog, but does not include a person who, at the time of the damage, is temporarily harboring, keeping, or exercising control over the dog; provided, however, that land ownership alone is not enough to qualify a landowner as a regular harborer even if the landowner gave permission to a third person to keep the dog on the land.

Tenn. Code Ann. § 44-8-413(e)(1). As should be evident, the General Assembly did not delimit the meaning of "owner" to the common connotation of a dog owner, i.e., one with a property interest in the dog. The statutory understanding of "owner" is broader, implicating persons who regularly harbor, keep, or exercise control over the dog. We observe that other jurisdictions have adopted similar approaches in this context and refused to singularly limit the concept of ownership to those who have a property interest. *See, e.g.*, *Jordan v. Lusby*, 81 S.W.3d 523, 524 (Ky Ct. App. 2002) (emphasis added) ("The applicable statute defines an 'owner' of a dog as 'every person having a right of property in the dog *and every person who keeps or harbors the dog, or has it in his care, or permits it to remain on or about premises owned by him.*' KRS 258.095(5). . . . 'Owner' in this case does not simply mean a person with a property interest in the dog, for reasons of public policy.").

At the oral argument of this matter, Quillco's counsel did not dispute that it would be theoretically possible for Quillco to be considered a statutory owner in this context; he simply argued that the requisite facts to establish such ownership were not present here.[2] As in the trial court, Quillco's counsel made the argument that this record only establishes, at best, Quillco's temporary control of the dogs. Our review of the record, however, reveals that there is evidence calling such a conclusion into question, particularly at the summary judgment stage. For instance, Lisa Coviello's deposition testimony indicated that the dogs had a regular presence in The Bottle Shop prior to the incident involving Ms. Folad.[3] She further testified that Quillco's employees, as "part of the business operations," had been instructed on how to keep the store's back door locked when the dogs were present in the store. There is thus evidence that points to a regularity of the dogs' presence in the store and Quillco's employees' involvement with the dogs.

Whether such evidence of the dogs' regularity of presence connects Quillco as a regular *harborer*, *keeper*, or *controller* of the dogs, *see* Tenn. Code Ann. § 44-8-413(e)(1), is of course the more pressing question. The court appeared to reason there was no such statutory status, noting that "[n]either the dogs' physical presence in the store nor [other

---

[2] He went so far, however, as to agree that there could be dual ownership in a particular situation.

[3] In pertinent part, Ms. Coviello agreed that customers would see the dogs in the store "quite often" prior to February of 2017.

evidence] was sufficient to remove the dogs from the care, custody, and/or control of their owner Lisa Coviello and place the dogs under the care, custody, and/or control of the LLC." We disagree with the trial court's conclusion that summary judgment was appropriate on this issue.

In reaching our holding on this matter, we certainly do not intend to suggest that a business entity should be considered a regular harborer, keeper, or controller of a dog within the meaning of the statute solely by dint of a dog's presence at the business. We expressly disavow any such proposition. In our view, whether status as harborer, keeper, or controller can attach to a business entity is entirely dependent on the purpose of a dog's presence at the business. Our approach on this issue is influenced by the stance taken by other courts in addressing similar matters, placing importance on whether or not the dog's presence is for the benefit of the business at issue. As one court articulated the concept:

> When an employee brings his or her dog onto the employer's premises, the first question is whether the dog is there for the employee's convenience or for the employer's benefit. If for the employer's benefit, the employer is probably the dog's keeper * * *. If for the employee's convenience, the employer is probably not the dog's keeper * * *.

*Frost v. Robave, Inc.*, 694 N.E.2d 581, 585 (Ill. App. Ct. 1998) (quoting Annotation, *Who "Harbors" or "Keeps" Dog Under Animal Liability Statute,* 64 A.L.R.4th 963, 971 (1988)).

Although the trial court did not specifically reference the foregoing principle or similar case law, it was ostensibly aware of such a general rule, as it made a specific finding that "[t]here is no evidence in the record which indicates that the dogs were engaged in any activity which would benefit or further Quillco's LLC business at the time of Folad's injury." As to that conclusion, we respectfully disagree and further hold that the trial court did not, as it claimed, "take all facts and their associated reasonable inferences in favor of Folad as the non-moving party." In support of its assertion that there was no evidence indicating the dogs were engaged in activity that would benefit or further Quillco's business, the trial court inserted a footnote and stated as follows: "[B]y way of example . . . the dogs were not engaged as guard dogs for the store." Although we have no quarrel with this particular observation in the court's footnote and are not aware of any evidence specifically indicating that the dogs were used for security purposes, the overall characterization of the evidence by the trial court embraces an overly narrow consideration of a dog's potential utility for the benefit of the business. Indeed, when considering the summary judgment record in this case and taking all facts and evidence in favor of the Folads, it is clear to us that there is ample evidence upon which a factfinder could connect the dogs' presence to Quillco's benefit.

There is extensive evidence, for instance, that the dogs were used in marketing for

the store. The dogs were advertised to the public as resident "shop dogs" of the store and as "Dogs on Duty – 4 legged employees on the clock." The marketing of the dogs extended to The Bottle Shop's website and its Facebook, Twitter, and Instagram social media platforms.[4] The store's website specifically included the picture of both dogs and, in advertising the dogs as part of the store experience, stated as follows: "We are a family friendly wine and spirits retailer and we welcome the kids to come in with their parents and say hello to Conor and Brownie, the resident shop dogs! Come see what a real neighborhood liquor store is like." Moreover, the dogs are allowed to roam freely when in the store, and as previously noted, there was evidence that customers who came to the store prior to February 2017 saw them regularly on the store premises. In our view, one can reasonably infer from this evidence that the purpose of the dogs' presence at The Bottle Shop was to enhance the customer experience of Quillco's customers. Such an enhancement of the customer experience, which is clearly touted by the store's website, is evidence of the dogs' use for a business benefit.

Although the trial court did not consider this evidence to present a barrier to the entry of summary judgment in Quillco's favor, it also made the following alternative holding, as previously outlined:

> Notably, the statute's definition of "owner" is prefaced with the phrase, "unless context otherwise requires." Thus, even if Folad had demonstrated a genuine dispute of material fact as to whether Quillco may be considered a statutory owner, the Court is empowered by the legislature to take into account the specific factual circumstances of this case. The factual circumstances of this case, even considered in the light most favorable to Folad, require the Court to conclude that Lisa Coviello owned the dogs in her capacity as an individual.

(internal footnotes omitted)

Respectfully, we take a different view of the prefatory language relied upon by the trial court in its alternative holding. In our view, such language does not speak to a court's discretion to ignore "owner" status to one otherwise meeting the statutory definition, but rather, it speaks to whether the statutory definition is to apply to every appearance of the word "owner" within section 44-8-413. The language cited by the trial court comes from Tennessee Code Annotated section 44-8-413(e), which begins as follows: "As used **in this section**, unless the context otherwise requires[.]" (emphasis added) Thus, the instruction is that the statutory definition of "owner" is not to apply to every appearance of that word within section 44-8-413 when the context so requires.

---

[4] The dogs were marketed there as "Bottle Shop employees," "resident Dogs on Duty," and "shop dogs."

To be sure, this prefatory qualification was a smart addition by the General Assembly, as section 44-8-413 includes other uses of the word "owner" which are clearly not intended to apply to "owners" of dogs. For instance, the definition of "Running at large" within the statute is said to apply to a dog who "goes uncontrolled by the dog's **owner** upon the premises of another without the consent of the *owner* of the premises, or other person authorized to give consent, or goes uncontrolled by the **owner** upon a highway, public road, street or any other place open to the public generally." (emphases added) In our view, in the two places above where we denoted "owner" in bold, the statutory meaning outlined in section 44-8-413(e)(1) is clearly intended to apply. The "context otherwise requires" phrase referenced by the trial court, however, applies as to the usage of "owner" which we italicized and underlined. In that place in the statute, as is evident from the context, the statutory definition relating to an owner of a dog is not to be inserted. The meaning of "owner" there is not to be informed or somehow circumscribed by the statutory definition. Rather, context dictates that the meaning relate to the owner *of the premises*, not the owner of a dog.

In light of the foregoing discussion, we hold that the trial court's entry of summary judgment in Quillco's favor pertaining to liability under Tennessee Code Annotated section 44-8-413 was error. For the reasons expressed herein, Quillco was not entitled to a holding at summary judgment that it could not be considered a statutory owner of the dogs at issue.

## CONCLUSION

The trial court's entry of summary judgment as it pertains to liability under Tennessee Code Annotated section 44-8-413 is, therefore, reversed. The balance of its judgment is affirmed.

s/ Arnold Goldin
ARNOLD GOLDIN, JUDGE