(No. 63052

JAMES STEINBERG, a Minor, Appellee, v. LAWRENCE PETTA, Appellant.

*Opinion filed December 3, 1986.*

James G. Mavrias and Judith A. Matthews, of Brenner, Mavrias, Dorn & Alm, of Chicago, for appellant.

Robert D. Quinlivan, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Cook

County, the plaintiff, James Steinberg, was awarded $7,508.20 in this action to recover for injuries he sustained as a result of a dog bite. The dog belonged to tenants of the defendant, Lawrence Petta, and the basis for liability was the defendant's status under the Animal Control Act (Ill. Rev. Stat. 1983, ch. 8, pars. 351 through 378) as a harborer of the dog. The appellate court affirmed the judgment, with one justice dissenting (139 Ill. App. 3d 503), and we allowed the defendant's petition for leave to appeal (103 Ill. 2d R. 315(a)).

The injury complained of occurred in Blue Island on August 13, 1981. Around 6 o'clock that evening the plaintiff, who was then 11 years old, and two friends were playing football. During their game they went to retrieve the ball from an adjacent alley, where they saw two other boys leaning over a four-foot-high cyclone fence petting a dog. After speaking to the other youths, the plaintiff and his friends took up a position along the fence about 10 feet from the others. Without warning, the dog ran toward where the plaintiff and his friends were standing, lunged over the fence, and bit the plaintiff on his nose. One of the boys then hit the dog, and it dropped back inside the yard. The plaintiff was taken to the hospital and the next day underwent plastic surgery.

The dog weighed about 65 pounds and was said to be a malamute or Alaskan husky. It belonged to Thomas Groskoph and Carol Welch, who occupied the ground floor of a two-story house owned by the defendant; another tenant lived on the second floor. James Tagler, who managed the property for the defendant and who would go there monthly to collect the rent, testified that several months before the injury here he gave Groskoph permission to erect a fence around the backyard. Tagler received complaints from several neighbors, who said that the dog was noisy and messy, and from the upstairs tenant, who said that the dog would bother him as he

walked through the backyard; Tagler said that he spoke to Groskoph and Welch about these matters. The defendant lived some four blocks from the property, and at trial he testified that he did not know about the fence or the presence of the dog until after the plaintiff was injured. It appeared from other testimony of the defendant and Tagler that no written lease was in effect at the time of the plaintiff's injury.

The plaintiff's complaint, in its final amended form, was in two counts and was against the property owner alone. The first count was brought under section 16 of the Animal Control Act (Ill. Rev. Stat. 1983, ch. 8, par. 366) and alleged the defendant's liability as a harborer of the tenants' dog. The second count was for negligence and alleged the defendant's control, as landlord, over the common areas of the property and his duty to passersby to keep the premises in a safe condition. The plaintiff alleged that the defendant was negligent in permitting in the backyard a dog that he knew or should have known was vicious. At the close of the plaintiff's case in chief, the trial judge directed a verdict in the defendant's favor on the negligence count because there was no evidence that the defendant was chargeable with knowledge that the dog was dangerous. The trial judge denied the defendant's motion for a directed verdict on the count alleging the statutory cause of action, however, and later denied a motion for judgment notwithstanding the verdict.

In affirming the judgment in favor of the plaintiff, a majority of the appellate court panel believed that the evidence was sufficient to sustain the jury's conclusion that the defendant harbored or kept the dog. In the appellate court's view, the jury could have found that the defendant received a benefit from the security provided by the fence and the dog, retained control over the backyard, and, through his manager's activity in mentioning

complaints about the dog to the owners, sought to exert control over the animal's use of that area.

Section 16 of the Animal Control Act (Ill. Rev. Stat. 1983, ch. 8, par. 366), the basis for the defendant's liability here, provides:

"If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained."

It may be noted that, unlike the alternative remedy available at common law, an action brought under section 16 of the Act does not require proof of the dog's vicious nature or the defendant's knowledge of that. (See *Beckert v. Risberg* (1965), 33 Ill. 2d 44, 46; *Nelson v. Lewis* (1976), 36 Ill. App. 3d 130, 133.) The Act defines "owner" in the following terms:

" 'Owner' means any person having a right of property in a dog or other animal, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premise occupied by him." (Ill. Rev. Stat. 1983, ch. 8, par. 352.16.)

Liability under the Act therefore extends to one who harbors an animal, and the only question presented in this appeal is whether the defendant may be regarded as having harbored the tenants' dog within the meaning of the statute.

Under the Act ownership is defined to include harboring or keeping an animal, but the statutory language does not provide any further definition or explanation of those terms. Our function in construing the statute is to determine and give effect to the legislative intent (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41), and no reason has been presented here for giving the term in question, harbor-

ing, any meaning other than its plain or commonly understood one (see *People v. Hicks* (1984), 101 Ill. 2d 366, 371; *People v. Greene* (1983), 96 Ill. 2d 334, 338). The verb "[h]arbor" means "[t]o afford lodging to, to shelter, or to give a refuge to." (Black's Law Dictionary 646 (5th ed. 1979).) Black's Law Dictionary defines "[k]eeper of dog" as: "A harborer of a dog. [Citation.] Any person, other than owner, harboring or having in his possession any dog. [Citation.] One who, either with or without owner's permission, undertakes to manage, control, or care for it as dog owners in general are accustomed to do." (Black's Law Dictionary 780 (5th ed. 1979).) See also 4 Am. Jur. 2d *Animals* sec. 92 (1962); 3A C.J.S. *Animals* sec. 205 (1973).

Harboring or keeping an animal therefore involves some measure of care, custody, or control, and it is in those senses that the terms "harbor" and "keep" have been construed under this and similar legislation. In *Heyen v. Willis* (1968), 94 Ill. App. 2d 290, the plaintiff's decedent was killed when he tried to avoid cattle astray on a highway, and a wrongful death action was brought against both the owner of the animals and the owners of the land where they had been grazing. One basis for liability asserted against the landowners was section 1 of "An Act in relation to domestic animals running at large" (Ill. Rev. Stat. 1965, ch. 8, par. 1), which made it a violation to permit farm animals to be at large. The appellate court held that the landowners were not owners or keepers of the cattle within the meaning of the statute and affirmed the trial court's order granting summary judgment in their favor. The court said, "To be a keeper of animals as that term is used in the statute requires more than the passive ownership of grazing lands. In this case the landowners owned no interest in the cattle, were not responsible for their care and had no right to their custody or control and accord-

ingly, cannot be held to be a 'keeper' within the meaning of the Animal Act." (*Heyen v. Willis* (1968), 94 Ill. App. 2d 290, 295.) To similar effect is *Thompson v. Dawson* (1985), 136 Ill. App. 3d 695, involving an action brought under section 16 of the Act for injuries caused by a dog that darted in front of a motorcycle. See also *Clark v. Rogers* (1985), 137 Ill. App. 3d 591, 593.

Whether the defendant kept or harbored the dog would usually be a question for the trier of fact (see *Thompson v. Dawson* (1985), 136 Ill. App. 3d 695, 699-700), but on the record before us we believe that the trial judge erred in denying the defendant's motions for a directed verdict and for judgment notwithstanding the verdict. The evidence presented at trial established nothing more than that the defendant, acting through his agent, permitted the tenants to keep a dog on the premises, which included the area of the backyard. We believe that the Act contemplates some degree of care, custody, or control on the part of a harborer or keeper, and that was not shown here. The plaintiff mentions that the defendant, as owner of the property, benefited from the erection of the fence, which was done at no cost to him, and from the presence of the dog, which provided additional security for the premises. Those benefits were merely incidental, however, to the tenants' activity. That the property manager would relay the neighbors' complaints about the dog to the tenants did not establish the degree of control contemplated by the statute. The defendant was an absentee landlord, and he did not have the tenants' dog in his care, custody, or control; he simply allowed the tenants to have a pet on the premises, and by no fair inference can he be deemed to have harbored or kept the animal, as those terms are used in the Act. To find the defendant liable under section 16 of the Act in these circumstances would, we believe, expand the scope of the statute beyond that intended by its

drafters.

For similar reasons, those cases relied on by the plaintiff, *Edelstein v. Costelli* (1967), 85 Ill. App. 2d 81 (abstract of opinion), and *Abraham v. Ibsen* (1919), 213 Ill. App. 210, may be distinguished. In *Edelstein*, the appellate court affirmed a judgment in favor of the plaintiff, who was bitten by a dog belonging to a tenant of the defendant building owner. The building owner contended that he did not own, harbor, or control the tenant's dog. The building owner also maintained a business in the part of the building not occupied by the tenant, however, and there was evidence that the dog guarded the premises and was allowed to roam throughout the building at night. In *Abraham* the plaintiff was bitten by a dog owned by a fraternity that the defendant's son belonged to—the son had brought the animal home with him for the weekend, and it was being kept for that time in the defendant's house. The action there was premised on a municipal ordinance forbidding an owner or keeper to allow an animal to be at large without a muzzle. In addition to the general verdict for the plaintiff, the jury returned a special finding that the defendant was an owner or keeper of the dog. The appellate court affirmed the judgment. The record in that case showed not only that the dog was being kept in the defendant's house with his knowledge, but also that after the occurrence the defendant told the attending physician he would pay the bill and that he asked to keep the dog when a police officer came to remove the animal.

We conclude that the evidence in this case, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favored the defendant that no contrary verdict based on it could ever stand, and therefore the trial court erred in denying the defendant's motions for a directed verdict and for judgment notwithstanding the verdict. (See *Johnson v. Colley* (1986), 111 Ill. 2d 468,

474; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) Accordingly, the judgments of the appellate and circuit courts are reversed.

*Judgments reversed.*