No. 2--97--0721

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

LAUREN GOENNENWEIN, a Minor, by ) Appeal from the Circuit Court

her Guardian, Father, and Next ) of Lake County.

Friend, Harry Goennenwein,  )

  )

Plaintiff-Appellant, ) No. 95--L--1974

)

v. )

)

MADELYN RASOF,  ) 

)

Defendant-Appellee  )

       )  Honorable

(Jeffrey Rasof and Steven Rasof,) Charles F. Scott, 

Defendants).  ) Judge, Presiding.

________________________________________________________________

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Lauren Goennenwein, by her father, Harry Goennenwein, appeals the entry of summary judgment for defendant, Madelyn Rasof, in plaintiff's personal injury action.  On appeal, plaintiff raises two issues: whether the trial court erred in finding that defendant was not an owner of the dog that injured plaintiff; and whether issues of fact existed concerning whether plaintiff knew or should have known of the dog's allegedly dangerous propensities. According to the second amended complaint, defendant's sons, Jeffrey and Steven Rasof, owned a Rottweiler that bit plaintiff on the face at defendant's home.  Defendant allegedly was an “owner” of the dog under the Animal Control Act (Act) (see 510 ILCS 5/2.16
 (West 1996)) because she “harbored” it in her home.  In the alternative, the second amended complaint alleged that defendant was negligent in that she kept or harbored a vicious dog, acted as a custodian of a vicious dog, knowingly permitted a vicious dog to remain on the premises, failed to warn plaintiff of the presence of the dog, failed to control the dog, allowed the vicious dog to be present, and allowed the dog to attack and bite plaintiff.

Defendant moved for summary judgment, arguing that she was not the owner of the dog and she had no knowledge of its vicious propensities. The undisputed facts from the depositions revealed the following.

The dog, Buddy, was purchased by two of defendant's sons, Jeffrey and Steven.  Steven had given up his interest in the dog to Jeffrey.  Defendant lived in Buffalo Grove, and Jeffrey resided in an apartment in Chicago.  Defendant invited her four sons and their dates to a Passover dinner at her house.  Four-year-old plaintiff and her mother Lissette were guests of defendant's son Alan.  According to Lissette, when she talked on the phone with defendant before the dinner, defendant indicated that she would confine her own dogs, a toy poodle and a female Rottweiler.

About an hour before the other guests arrived for the dinner, Jeffrey came to defendant's house with Buddy.  Defendant was not aware that Jeffrey was going to bring the dog, but she did not tell  Jeffrey to take the dog home.  When Alan, Lissette, and plaintiff arrived, Buddy jumped on Alan in a friendly greeting.  For about an hour before dinner, Buddy wandered around the house and did not growl, snarl, or threaten anyone.  Someone provided him with water, and Jeffrey gave him food during dinner.  After dinner, plaintiff got up from the table and, as she was walking past Buddy, he lunged at her, knocked her down, and bit her face.

In her deposition, Lissette testified to an incident in which Buddy jumped on her when she was hugging Alan.  However, defendant was not present for the incident, and there was no evidence that defendant was aware of it.  Lissette also testified that Alan told her that his grandmother was not coming to the dinner because a couple of weeks earlier Buddy had nipped her hand and she did not want to be around the dog.  By contrast, both defendant and Steven testified that the grandmother was not coming to the dinner because she was spending the holiday with another one of her children.  Defendant testified that she did not know Buddy would be at the dinner until Jeffrey showed up with the dog.  While Lissette stated that plaintiff did not have food when she walked by the dog, Lissette admitted that she did not see the attack.

Defendant testified that Buddy was at her house during an earlier dinner party which was uneventful.  Defendant denied that either Alan or Lissette asked her to confine Buddy.  According to defendant, plaintiff threw food to Buddy during dinner.  Defendant was not aware that Buddy had bitten anyone before this incident.

According to Steven, Buddy was  a friendly dog who had never bitten anyone.  He did not growl at people but did display aggression with other dogs.  Steven's grandmother is afraid of large dogs, but he did not hear that she had been bitten by Buddy.  Steven further testified that he saw plaintiff feeding Buddy pieces of turkey.  When plaintiff tried to squeeze past Buddy, she was carrying a piece of turkey up by her mouth, and Buddy growled and went for it.  Steven jumped up and pulled the dog off of plaintiff.  At the time of the incident, Buddy was about a year old and weighed over 100 pounds.

Plaintiff, who was six years old at the time of her deposition, could not recall much about the incident.  She denied that she was holding any food when the dog bit her, but she could not remember what she was doing at the time other than walking towards the kitchen.  She also denied that the dog growled at her before it bit her or that she had given it any food.

The trial court granted summary judgment to defendant on those counts of the complaint that were against her, and it made a Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) finding.  Plaintiff timely appealed.

Summary judgment is proper when the pleadings, affidavits, and other documents on file, construed in favor of the nonmovant, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995).  Summary judgment is a drastic means of resolving litigation and should be allowed only when the right of the moving party to judgment is clear and free from doubt.  
Espinoza
, 165 Ill. 2d at 113.  While a plaintiff need not prove her case at the summary judgment stage, she must come forward with some facts that would arguably entitle her to judgment.  
Jones v. Minster
, 261 Ill. App. 3d 1056, 1059 (1994).  We review the entry of summary judgment 
de novo
.  
In re Estate of Hoover
, 155 Ill. 2d 402, 411 (1993). 

Plaintiff first contends that the trial court erred in granting summary judgment on the count alleging that defendant was the owner, under the Act, of the dog that bit plaintiff.  Under section 16 of the Act, an owner is liable if a dog, without provocation, attacks a person in a place where he may be lawfully.  510 ILCS 5/16 (West 1996).  The Act defines an “owner” in the following manner:

“[A]ny person having a right of property in a dog or other animal, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premise occupied by him.”  510 ILCS 5/2.16 (West 1996).

Whether the defendant is an “owner” of the animal normally is a question of fact; however, where the undisputed facts show no genuine issue, the court may grant summary judgment.  See 
Eyrich v. Johnson
, 279 Ill. App. 3d 1067, 1070 (1996).

Plaintiff claims that because defendant “knowingly permit[ted]” the dog to be on her property, she should be considered an “owner.”  We disagree.  Although the primary goal of the Act is to encourage tight control of animals for the protection of the public, there must be “a factual and reasonable basis to impose liability.”  
Meyer v. Naperville Manner, Inc.
, 262 Ill. App. 3d 141, 148 (1994).  Plaintiff asserts that the Act creates three separate categories of liability: one who cares for an animal, one who acts as its custodian, and one who knowingly permits it to remain on his or her premises.  However, “[r]ather than being separate and distinct, it would appear that these three categories are examples of keeper or harborer.”  
Frost v. Robave, Inc.
, No.  1--97--2105, slip op. at ___ (1st
 Dist. April 21, 1998).  Merely allowing an animal to be temporarily on one's premises does not make the landowner a keeper or harborer of the animal.  
Frost
, slip op. at ___.

Severson v. Ring
, 244 Ill. App. 3d 453 (1993), which defendant cites, is factually on point.  In 
Severson
, the owner of the dog left it tied to a tree in the defendant's yard while the owner went to cut the grass at the defendant's mother's house.  This was the second time the defendant had permitted the dog to be on her property.  The defendant did not care for the dog or give it food or water.  About a half hour after the dog was left on the defendant's property, it bit a child.  The appellate court ruled that the defendant was not an “owner” of the dog, as “the term 'owner' has been consistently construed to involve some measure of care, custody or control.”  
Severson
, 244 Ill. App. 3d at 457.  As the defendant did not control or have custody of the dog, the court determined that the defendant was not an “owner.”

The facts here are even less compelling for ownership, as Buddy's owner remained on the premises and was taking care of the dog at the time of the attack.  We believe that, where the owner of the animal is present and in control of it, the property owner cannot be considered an “owner” under the Act merely because the property owner has permitted the animal to be on the premises.  Plaintiff's interpretation of section 16 is diametrically opposed to that of our supreme court.  In 
Steinberg v. Petta
, 114 Ill. 2d 496 (1986), the court interpreted this section as extending liability only “to one who harbors an animal.”  
Steinberg
, 114 Ill. 2d at 500.  The court further explained that harboring an animal “involves some measure of care, custody, or control.”  
Steinberg
, 114 Ill. 2d at 501.  The court determined that an absentee landlord, who permitted a dog to be present on his property, was not an owner under the statute.  
Steinberg
, 114 Ill. 2d at 502.  Because defendant exercised no degree of care, custody, or control over Buddy, as a matter of law, she was not Buddy's owner.

Plaintiff next contends that the court erred in granting summary judgment on the count alleging common-law negligence against defendant.  Plaintiff asserts that there were issues of fact whether defendant knew or should have known that Buddy presented a danger to plaintiff.

It is presumed that a dog is tame, docile, and harmless absent evidence that the dog has demonstrated vicious propensities.  
Lucas v. Kriska
, 168 Ill. App. 3d 317, 320 (1988).  To impose a duty on defendant, plaintiff needed to establish that defendant knew or had reason to know that the dog would be dangerous to children.  See 
Lucas
, 168 Ill. App. 3d at 320.  Because a dog ordinarily is not a danger to children (see 
Lucas
, 168 Ill. App. 3d at 320), plaintiff needed to come forward with evidence to show that defendant knew that Buddy was a danger to children.  This plaintiff has failed to do.  Instead, she argues that, merely because Buddy is a young, male Rottweiler, defendant should have known there was a danger.

We disagree with plaintiff's assertion that it is common knowledge that the Rottweiler breed is dangerous.  We will not malign a breed on the basis of hysteria or rumor, and under Illinois law, “each dog is to be evaluated individually and is not to be classified as 'vicious' merely because of its breed or type.”  
People v. Riddle
, 258 Ill. App. 3d 253, 260-61 (1994).

Moreover, that defendant confined her own Rottweiler is indicative of nothing, as she also confined her toy poodle.  Similarly, the evidence plaintiff cites to support her assertion that Buddy was at a stage of adolescence associated with aggressive behavior also fails to raise an issue of fact as to 
defendant's
 knowledge.  There is no evidence that defendant ever saw the documents to which plaintiff refers, and, in any event, these statements describe dog development in general, not just the development of the Rottweiler, and defendant's dog was younger than Buddy.

The undisputed facts show that Buddy was friendly or at worst indifferent to the guests.  He did not growl, snarl, or threaten anyone in the two hours prior to the attack.  He did not chase or bother plaintiff at any time before that.  At a prior dinner party at defendant's residence when Buddy was present, he caused no problems.  We conclude that plaintiff failed to come forward with evidence to raise an issue of fact as to defendant's knowledge of the dog's alleged dangerousness.

We therefore affirm the judgment of the circuit court of Lake County.

Affirmed.

GEIGER, P.J., and McLAREN, J., concur.