2022 IL App (1st) 210862-U

FIFTH DIVISION
June 24, 2022

No. 1-21-0862

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| HOLLI A. BERGER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ARKADIUSZ P. KALITA, WAVE218, LLC, | ) | |
| an Illinois Series LLC and Illinois Corporation, | ) | No. 18 L 12157 |
| KRISHNAN SARANATHAN, and PAWEL | ) | |
| CZECHOWICZ, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | John H. Ehrlich, |
| (Wave218, LLC, Krishnan Saranathan, and | ) | Sandra G. Ramos, |
| Pawel Czechowicz, Defendants-Appellees). | ) | Judges Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment granting summary judgment is affirmed.

¶ 2    The plaintiff-appellant, Holli Berger, filed a complaint in the circuit court of Cook County

against the defendants, Arkadiusz Kalita,[1] Wave218, LLC, Krishnan Saranathan, and Pawel Czechowicz. The circuit court granted summary judgment in favor of Wave218, Mr. Saranathan, and Mr. Czechowicz and dismissed Ms. Berger's claims against them. Ms. Berger now appeals. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                              BACKGROUND

¶ 4      On June 17, 2019, the plaintiff, Ms. Berger, filed a second amended complaint against Mr. Kalita, Wave218, Mr. Saranathan, and Mr. Czechowicz. The complaint alleged that on May 29, 2017, Ms. Berger was walking along a sidewalk in a residential area, adjacent to a residence located at 218 Waverly Lane in Schaumburg, when a dog named Sunia "made a sudden and unexpected attack on" her and her dog. Ms. Berger alleged that, as a result, she "suffered serious and personal injuries and damages."

¶ 5      The complaint alleged that Mr. Kalita "owned, possessed, and/or controlled" Sunia, "which he kept and maintained" at his residence, located at 218 Waverly Lane. Count I of the complaint alleged that Mr. Kalita violated the Animal Control Act and was therefore liable for the damages Sunia caused to Ms. Berger. Count II was a negligence claim against Mr. Kalita based on his alleged failure to control Sunia.

¶ 6      Count III of the complaint was an Animal Control Act claim against Mr. Saranathan and Wave218. It alleged that Mr. Saranathan and Wave218 owned the residence located at 218 Waverly Lane on May 29, 2017, which was where Sunia lived.[2] It further alleged that Mr. Saranathan and Wave218 "owned, possessed, controlled, kept, harbored, and knowingly permitted" Sunia to live at 218 Waverly Lane.

_____

[1]Mr. Kalita is a not a party to this appeal.
[2]The record reflects that Mr. Saranathan is the sole owner of Wave218, which is an LLC.

¶ 7    Count IV was a negligence claim against Mr. Saranathan and Wave218. That count alleged that Mr. Saranathan and Wave218 were negligent in the following ways:

> "a. Failure to secure the gate with a lock when they had knowledge of the dog's prior attacks on other people;
>
> b. Failed to prevent the dog from running at large;
>
> c. Failed to reasonably contain the dog on the premises;
>
> d. Failed to restrain the dog;
>
> e. Failed to provide a sufficent means to secure the gate on the premises;
>
> f. Failed to repair the fence/gate to remain in [a] dangerous unsecured condition when they knew or should have know[n] of the dangerous propensity of the dog named Sunia."

Regarding the allegation about having knowledge of Sunia's dangerous propensities, the complaint cited a police report from 2015 concerning Sunia biting "a female" that required Sunia to be checked for rabies.

¶ 8    Count V was a claim based on the Animal Control Act against Mr. Czechowicz, who leased the premises at 218 Waverly Lane and lived there with Mr. Kalita and Sunia. The claim was identical to the claims against the other defendants also filed pursuant to the Animal Control Act. And Count VI was a negligence claim against Mr. Czechowicz, which again cited the police report of Sunia's alleged bite in 2015. The complaint alleged that Mr. Czechowicz was negligent when he:

> "a. Failed to use a muzzle when he had knowledge of the dog's prior attacks on other people;
>
> b. Failed to secure the gate with a lock when he had knowledge of the dog's

prior attacks on other people;

c. Failed to prevent his dog from running at large;

d. Failed to reasonably contain his dog on the premises; and

e. Failed to restrain his dog."

¶ 9    Count VII was a "property damage" claim against all of the defendants for the injuries suffered by Ms. Berger's dog, Gemma, when Sunia attacked them.

¶ 10    In response to Ms. Berger's complaint, Mr. Saranathan, Wave218, and Mr. Czechowicz all denied the complaint's allegations. However, Mr. Kalita never appeared and a default judgment was entered against him.

¶ 11    Subsequently, depositions were taken from Ms. Berger, Mr. Saranathan, and Mr. Czechowicz, as well as Kristen Smoot and Jacques Jacobs, who were neighbors of the 218 Waverly Lane residence.

¶ 12    In her deposition, Ms. Berger testified that on May 29, 2017, she was walking her dog, Gemma, on the sidewalk along Waverly Lane at approximately 9 p.m. Suddenly, she heard a "thump, thump, thump" and "then saw a big mouth come and take [her] dog down." The dog, which she later learned was named Sunia, "leap[t] in the air to grab [her] dog." Ms. Berger testified that she only saw Sunia about a second or two before that moment and that she did not see where Sunia came from. Sunia "pinned" Gemma to the ground and both Ms. Berger and Gemma started screaming. Ms. Berger unsuccessfully attempted to get in between the two dogs, and she was bitten in the process. Sunia bit Gemma's abdomen and neck. A nearby neighbor, Kristen Smoot, eventually ran out of her house to help separate the dogs. As the two women tried to pull Sunia off of Gemma, Ms. Smoot was also bitten. Another neighbor, Jacques Jacobs, then came outside and was able to successfully pull Sunia away from Gemma and tie her to a tree.

¶ 13    Ms. Berger testified that with Sunia secured, Ms. Berger and Ms. Smoot began talking "to the police that had just shown up." Mr. Jacobs "went across the street and knocked on the door of the house that he thought the dog belonged to." Ms. Berger testified that she was told by Ms. Smoot, the police, and an animal control officer that the house where Mr. Jacobs knocked on the door was where Sunia lived. The address was 218 Waverly Lane. She eventually saw a "male figure" come across the street to get Sunia. Ms. Berger did not get a good look at the man and did not speak with him. After Ms. Berger spoke with the police, she took Gemma to the animal hospital for treatment and then went to the hospital herself for the bites on her hands.

¶ 14    Ms. Berger further testified that she did not know how Sunia got out into the street but that Ms. Smoot subsequently told her that Sunia's owner, who lived at 218 Waverly Lane, had complained to the landlord about the house's gate "not operating correctly." She stated that the animal control officer involved in the case told her the same thing. Ms. Berger then drove by 218 Waverly Lane herself and saw that the gate "looked a little uneven" and "wasn't latched." She never spoke with Sunia's owner or anyone who lived at 218 Waverly Lane.

¶ 15    Mr. Czechowicz testified in his deposition that he moved into the house located at 218 Waverly Lane in 2015. Mr. Kalita and Sunia moved into the house at the same time and lived in the basement. Mr. Czechowicz and Mr. Kalita had a business relationship and both worked out of the house. Mr. Czechowicz testified that they rented the house from Mr. Saranathan and split the rent, but Mr. Kalita was not on the lease because of his poor credit score. Mr. Czechowicz stated that Mr. Kalita was present during the lease signing between him and Mr. Saranathan, and so Mr. Saranathan knew Mr. Kalita would also be living there even though he was not on the lease. Mr. Czechowicz further testified that the lease prohibited pets, but that they mentioned Sunia to Mr. Saranathan and that he knew Sunia would be living at the premises. Mr. Czechowicz explained

that Mr. Saranathan would stop by the house occasionally to perform inspections and maintenance. Mr. Czechowicz did not recall ever having an issue with the gate or its latch.

¶ 16    Regarding Sunia, Mr. Czechowicz testified that he was not aware of any other incidents where she bit someone. He stated that Sunia was not his dog and not his responsibility. He saw Sunia inside the house but never took care of her in any way. He testified that he was out of state on May 29, 2017, when the incident occurred.

¶ 17    Ms. Smoot testified that she lived near 218 Waverly Lane and saw Sunia in the yard sometimes, but never saw her exhibit aggressive behavior before May 29, 2017. However, the mailman told her, that Sunia had lunged at him and ripped his pant leg, and that other mailmen did not want to deliver to 218 Waverly Lane. She never noticed any issues with the gate at 218 Waverly Lane. Ms. Smoot testified that she did not know how Sunia got out of the yard. Following the incident, she spoke with Mr. Saranathan a couple of times, who told her that the renters were not supposed to have dogs on the premises. She also heard that Sunia had since been euthanized.

¶ 18    Mr. Jacobs, who also lived near 218 Waverly Lane, testified consistently with the others. He also testified that following the incident, he figured out that Sunia lived across the street from where the incident occurred, which was 218 Waverly Lane. It was he who brought Sunia back to her owner after the incident. He testified that Sunia must have run from her yard and through the gate to attack Gemma. Mr. Jacobs agreed, however, that any of his testimony about how Sunia got out of the yard was "purely speculative."

¶ 19    In his deposition, Mr. Saranathan testified that he owns the house located at 218 Waverly Lane through his LLC, Wave218. He explained that he owns several properties that he rents out, including 218 Waverly Lane, and that he stops by each property two to three times a year to do a "cursory look" and "make sure the house is well taken care of." If he sees anything that requires

maintenance, he takes care of it. Regarding 218 Waverly Lane, he never noticed any issues with the fence or received any complaints about it. In 2018, though, he did hire a company to complete some repairs on the fence.

¶ 20    Mr. Saranathan further testified that he did not know that a dog was living at 218 Waverly Lane until after the incident occurred on May 29, 2017. He saw Mr. Kalita during one of his inspections, but he never saw Sunia. He knew Mr. Kalita was Mr. Czechowicz's business partner and was at the house a lot, but he did not realize that Mr. Kalita was also living in the house until after the incident.

¶ 21    On October 13, 2020, Mr. Saranathan and Wave218 moved for summary judgment as to the claims against them. Their motion asserted that in order to impose liability in a negligence claim on someone other than the dog's owner, a plaintiff must show that a defendant had prior knowledge of the dog's viciousness. They argued that, "the record is devoid of any admissible evidence that [Mr.] Saranathan or Wave218, had knowledge of the dog's presence on the premises, much less that the dog had demonstrated vicious propensities." Mr. Saranathan and Wave218 further argued that they were entitled to summary judgment because they did not owe a duty to Ms. Berger to protect her from injuries, claiming that they "had no control over the premises from which the dog allegedly became loose because the entirety of the premises had been leased to [Mr.] Czechowicz." Regarding Ms. Berger's allegations about the fence, Mr. Saranathan and Wave218 asserted that those allegations "do not obviate the vicious propensity rule when the injury is caused by a dog," and so the allegations concerning the gate were "irrelevant." They argued, nonetheless, that there was "no evidence to support that there was any defect in the gate."

¶ 22    On October 26, 2020, Mr. Czechowicz filed his own motion for summary judgment as to the claims against him. His motion argued that Sunia was "owned and harbored solely by" Mr.

Kalita, and even though he lived in the same house as Mr. Kalita and Sunia, he did not care for or control Sunia in any way. And just like Mr. Saranathan and Wave218, Mr. Czechowicz claimed that he had no knowledge of Sunia's prior viciousness, and so he was entitled to summary judgment.

¶ 23    Ms. Berger filed a combined response to both motions for summary judgment. Her response argued that a genuine issue of material fact existed as to whether the three defendants were "owners" of Sunia, whether they knew about Sunia's dangerous propensities, and whether Sunia escaped due to a defective condition in the fence. She asserted that, consequently, summary judgment should be denied.

¶ 24    On January 6, 2021, the trial court granted both motions for summary judgment and dismissed Mr. Saranathan, Wave218, and Mr. Czechowicz from the case with prejudice.[3] In its written order, the trial court analyzed the different claims identified in Ms. Berger's second amended complaint.

¶ 25    Regarding the Animal Care Act (Act) claims, the trial court noted that the Act "imposes penalties against both the owner of the animal and anyone who places himself in a position of control akin to an owner." The trial court stated that the only contested issue was whether Mr. Saranathan and/or Mr. Czechowicz "owned" Sunia within the meaning of the Act. Relying upon *Steinberg v. Petta*, 114 Ill. 2d 496 (1986), the trial court stated that it is well established that merely permitting a dog to be on a rented property is insufficient to establish ownership pursuant to the Act. Accordingly, the trial court found that, regardless of whether Mr. Saranathan knew about Sunia living in the house, he and Wave218 never controlled or had custody of Sunia, and therefore

---

[3]The trial court's order also stated that the "case against the defaulted defendant" Mr. Kalita "continues as to" the claims against him.

could not be considered "owners" under the Act. The trial court then acknowledged that "the facts are different for [Mr.] Czechowicz, but the result is the same." The trial court explained that it was uncontested that Mr. Czechowicz did not provide any care for or have any control of Sunia, especially on the date of the incident when it was undisputed that he was out of town. Like Mr. Saranathan and Wave218, the trial court found that Mr. Czechowicz's knowledge that Sunia lived at the house was insufficient on its own to meet the Act's ownership definition.

¶ 26 Moving on to the negligence claims, the trial court noted that, when a negligence claim involves a dog against someone other than the dog's owner, it must be demonstrated that the defendant had prior knowledge of the dog's viciousness. The trial court stated that it was uncontested that neither Mr. Saranathan nor Mr. Czechowicz had knowledge of Sunia's viciousness. Noting that Ms. Berger relied upon a police report which purported to establish the defendants' knowledge of Sunia's vicious propensities, specifically that she allegedly bit someone at 218 Waverly Lane in 2015, the trial court explained that police reports are inadmissible hearsay, and so it would not consider it. The court stated that even if the police report was admissible, though, it still only supported the conclusion that Mr. Kalita knew of Sunia's prior viciousness and did not provide any support for "which it could be inferred that either [Mr.] Czechowicz or [Mr.] Saranathan had the same knowledge."

¶ 27 In analyzing the portions of Ms. Berger's negligence claims that concerned the condition of the fence, the trial court held that:

> "Even if there remains a question of fact under the [lease] as to who owed [Ms.] Berger [a duty] to repair the fence, gate, and latch, neither [Mr.] Saranathan nor [Mr.] Czechowicz had any reason to make repairs since neither knew of Sunia's dangerous propensities."

And as to any statements made to Ms. Berger about the condition of the fence, the trial court held those statements were hearsay which it could not consider.

¶ 28    The trial court therefore found that summary judgment was appropriate as to all claims against Mr. Saranathan, Wave218, and Mr. Czechowicz, and dismissed the case against them with prejudice. Ms. Berger subsequently filed a motion to reconsider, which the trial court denied on May 25, 2021. That order noted that the case remained pending against Mr. Kalita

¶ 29    Mr. Saranathan, Wave218, and Mr. Czechowicz then requested a Rule 304(a) finding regarding the trial court's May 25, 2021, order which denied Ms. Berger's motion to reconsider the trial court granting summary judgment. On June 24, 2021, the trial court entered an order with Rule 304(a) language, specifically stating that there was no just reason to delay the enforcement or appeal of the May 25, 2021, order.

¶ 30    On July 20, 2021, Ms. Berger filed a notice of appeal. The notice of appeal cited and attached the trial court's June 24, 2021, order and stated that she was challenging the trial court's judgment granting summary judgment in favor of Mr. Saranathan, Wave218, and Mr. Czechowicz.

¶ 31                                ANALYSIS

¶ 32    As an initial matter, we address Mr. Saranathan and Wave218's argument that we lack jurisdiction to consider this appeal. Mr. Saranathan and Wave218 contend that Ms. Berger's notice of appeal "only indicates that she intended to appeal the trial court's order of July 24, 2021." They acknowledge that her notice of appeal states that the order she is challenging granted summary judgment in favor of the defendants, but they note that the July 24, 2021, order, which is the only order cited in the notice of appeal, "simply granted the [d]efendants' request for a Supreme Court Rule 304(a) finding," and did not rule on the motions for summary judgment or the motion to reconsider. Since Ms. Berger is challenging the trial court's order granting summary judgment and

*not* the order making a Rule 304(a) finding, Mr. Saranathan and Wave218 assert that this court lacks jurisdiction to decide the issues raised in Ms. Berger's brief.

¶ 33    We are not persuaded by Mr. Saranathan and Wave218's argument. Because the claims against Mr. Kalita remain pending, the trial court's order granting summary judgment and dismissing Mr. Saranathan, Wave218, and Mr. Czechowicz from the case was not a final, appealable order. See *Illinois State Bar Association Mutual Insurance Co. v. Canulli*, 2019 IL App (1st) 190141, ¶ 11 (an order is final, and an appeal may be taken, when a court has resolved all claims against all parties). "However, an order may be final notwithstanding the fact that it does *not* dispose of an entire proceeding, if the circuit court makes an express written finding that 'there is no just reason for delaying either enforcement or appeal or both.' " *Id.* (quoting Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)). Thus, the trial court's January 6, 2021, order granting summary judgment and the May 25, 2021, order denying reconsideration, were not final and appealable until the trial court entered a Rule 304(a) finding on July 24, 2021. Ill. S. Ct. R. 304(a). And Ms. Berger filed a timely notice of appeal within 30 days of the July 24, 2021, Rule 304(a) finding. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 34    It is true that Ms. Berger's notice of appeal only cites the trial court's July 24, 2021, order, and makes no mention of the January 6, 2021, order granting summary judgment or the May 25, 2021, order denying reconsideration. A notice of appeal "shall specify the judgment or part thereof or other orders appealed from." Ill. S. Ct. R. 303(b)(2). Nevertheless, it is well established that a notice of appeal is to be *liberally construed*. *Northbrook Bank & Trust Co. v. 2120 Division LLC*, 2015 IL App (1st) 133426, ¶ 7. Indeed, "[w]here the notice [of appeal] adequately sets forth the judgment complained of[,] and the relief sought, the notice is effective[,] and the appellate court has jurisdiction to consider the issues." *Id.* Here, Ms. Berger's notice of appeal explicitly states

that she is challenging the trial court's order granting summary judgment. Although her notice of appeal only cites the July 24, 2021, order, it still identifies, to the defendants and to this court, the purpose of her appeal. Further, the July 24, 2021, order was clearly the culmination of the trial court's ruling in its prior orders of January 6, 2021, and May 25, 2021. And Ms. Berger's brief on appeal makes clear that she is challenging the summary judgment order and not the Rule 304(a) finding. See *id.* (the briefs, not the notice of appeal itself, specify the precise points to be relied on for reversal).

¶ 35    It is also worth noting that Ms. Berger could not challenge the summary judgment order *until* the July 24, 2021, Rule 304(a) finding was made by the court. As the July 24, 2021, order *relates back* to the January 6, 2021, order granting summary judgment, and Ms. Berger's notice of appeal and appellate brief make clear that she is challenging the summary judgment order, her notice of appeal is sufficient to confer jurisdiction on this court. See *id.* ¶ 8 (it is not necessary that the notice of appeal identify a particular order to confer jurisdiction, as long as the order that is identified in the notice of appeal directly relates back to the order or judgment sought to be reviewed). Having found that we have jurisdiction to consider this matter, we now turn to the merits of Ms. Berger's arguments.

¶ 36    Ms. Berger presents the following issue for our review: whether the trial court erred in granting summary judgment in favor of Mr. Saranathan, Wave218, and Mr. Czechowicz. She makes multiple arguments that amount to her claiming that a genuine issue of material fact exists as to: whether Mr. Saranathan, Wave218, and Mr. Czechowicz were "owners" of Sunia under the Act; whether the three defendants knew of Sunia's dangerous propensities; and whether Mr. Saranathan retained control over the premises. She accordingly asks this court to reverse the trial court's order granting summary judgment in favor of Mr. Saranathan, Wave218, and Mr.

Czechowicz.

¶ 37 Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review appeals from summary judgment rulings *de novo*. *Id.*

¶ 38 Summary judgment was granted by the trial court in this case, in part, on the basis that there is no question of material fact that Mr. Saranathan, Wave218, and Mr. Czechowicz could not be liable under the Act when they were not Sunia's owners. In order to recover for a claim under the Act, the plaintiff must prove four elements: (1) *an injury caused by an animal owned by the defendant*; (2) lack of provocation; (3) the peaceable conduct of the injured person; and (4) the presence of the injured person in a place where he has a legal right to be. *Beggs v. Griffith*, 393 Ill. App. 3d 1050, 1054 (2009). Since the overriding purpose of the Act is the protection of the public from harm, the Act imposes penalties against both the owner of the animal and anyone who places himself in a position of control akin to an owner. *Id.* Under the Act, ownership is defined to include harboring or keeping an animal, which amounts to undertaking to manage, control, or care for the dog as dog owners in general are accustomed to doing. *Steinberg*, 114 Ill. 2d at 501.

¶ 39 Ms. Berger argues that Mr. Saranathan and Wave218 were "owners" of Sunia for purposes of the Act because they knew a dog was living at the house and permitted her to remain on the premises, despite the lease prohibiting pets. While there is conflicting evidence about whether Mr.

Saranathan was aware of a dog living on the premises before the incident, that is immaterial. As the trial court noted, our supreme court in *Steinberg* held that an absentee landlord is not an owner for purposes of the Act *when the landlord merely permits the tenants to keep a dog on the premises. Id.* at 502. Ms. Berger makes much of the fact that dogs were prohibited in the lease. However, there is no contract claim at issue and in any event, she is not a party to the lease which prohibits dogs. Therefore, whether Sunia was living at 218 Waverly Lane in violation of the lease has no bearing on whether Mr. Saranathan and Wave218 were her "owners." Indeed, regardless of Mr. Saranathan's *knowledge* of Sunia living at 218 Waverly Lane, the record shows that he never *managed, controlled, or cared* for the dog in any way. See *Goennenwein by Goennenwein v. Rasof*, 296 Ill. App. 3d 650, 653 (1998) (merely allowing an animal to be on one's premises does not make the landowner a keeper or harborer of the animal). As such, there is no question that Mr. Saranathan and Wave218 were not owners of the dog for which they could be liable under the Act.

¶ 40     Ms. Berger also argues that there is a question of fact as to whether Mr. Czechowicz was an "owner" of Sunia under the Act because he harbored the dog in his house. Again, to find that someone other than the owner harbored a dog, it must be shown that the person managed, controlled, or cared for the dog *as an owner would*. Ms. Berger did not present any evidence that Mr. Czechowicz harbored Sunia in such a way. In fact, the only evidence presented showed that Mr. Czechowicz *did not care for the dog at all*. Even though he shared a house with the dog, he testified that only his roommate, Mr. Kalita, the dog's owner, was responsible for the dog. Nothing in the record rebuts that testimony. Further, it is undisputed that Mr. Czechowicz was out of town on the date of the incident. See *Frost v. Robave, Inc.*, 296 Ill. App. 3d 528, 535 (1998) (Illinois courts have consistently held that a person's status as keeper is dependent upon control over the animal at the time of the injury). Thus, there is also no question of fact that Mr. Czechowicz

was not the dog's owner and is not liable under the Act. The trial court therefore properly granted summary judgment regarding Ms. Berger's claims pursuant to the Act.

¶ 41     Summary judgment was also granted in this case on Ms. Berger's negligence claims on the basis that none of the defendants knew about Sunia's dangerous propensities. To impose liability on someone other than the dog's owner under principles of common law negligence, the plaintiff must show that a defendant had prior knowledge of the dog's viciousness. *Tyrka v. Glenview Ridge Condominium Ass'n*, 2014 IL App (1st) 132762, ¶ 52.

¶ 42     Ms. Berger relies heavily on an alleged incident that occurred at 218 Waverly Lane in 2015, when Sunia allegedly bit "a female." However, the only evidence of that alleged incident is a police report, which is inadmissible hearsay. See *Rodriguez v. Frankie's Beef/Pasta & Catering*, 2012 IL App (1st) 113155, ¶ 14 (generally, statements contained in police reports are considered inadmissible hearsay). As the trial court properly did not consider this evidence, neither will we. We reiterate the trial court's note that, hearsay aside, the police report only establishes *Mr. Kalita's* knowledge of the dog's viciousness. Absent any other admissible evidence of the dog's dangerous propensities, it cannot be said that Mr. Saranathan, Wave218, and Mr. Czechowicz had prior knowledge of the dog's viciousness. Thus, no question of material fact exists as to whether they are liable under the negligence claims.

¶ 43     We acknowledge that parts of Ms. Berger's negligence claims involve allegations that Mr. Saranathan and Wave218 knew that the fence on the premises required repair and failed to maintain it properly. The underlying point to this allegation is that the dog was able to escape the yard through the unsecured fence. On appeal, Ms. Berger still maintains that a question of fact exists as to whether Mr. Saranathan and Wave218 retained control of the premises and, as such, had a duty to maintain the property, including the fence, in a reasonably safe manner. This is an

irrelevant argument. As mentioned by the trial court and discussed already in our analysis, when a common law negligence claim involves a dog, such as Ms. Berger's claims in this case, *it must be shown that the defendants had prior knowledge of the dog's viciousness*. So, regardless of the condition of the fence or who had a duty to repair it or how the dog got out of the yard, liability cannot be imposed against Mr. Saranathan and Wave218 when there is no evidence to show that they knew of the dog's dangerous propensities. Stated another way, the question of whether Mr. Saranathan and Wave218 retained control of the premises does not discard the requirement that they have prior knowledge of the dog's viciousness. See *Lucas v. Kriska*, 168 Ill. App. 3d 317, 320 (1988) (to impose liability on someone other than the dog's owner or keeper under principles of common law negligence, the plaintiff must show a defendant property owner had prior knowledge of the dog's viciousness). We note that, in any event, Ms. Berger's arguments regarding the fence are all based on hearsay and speculation.

¶ 44    In sum, there is no genuine issue of material fact that Mr. Saranathan, Wave218, and Mr. Czechowicz were not the dog's "owners" for purposes of the claims brought pursuant to the Act and did not have prior knowledge of the dog's viciousness for purposes of the negligence claims. The trial court therefore properly granted summary judgment in favor of Mr. Saranathan, Wave218, and Mr. Czechowicz, and we affirm the trial court's judgment. See *Duniver v. Clark Material Handling Co.*, 2021 IL App (1st) 200818, ¶ 12 (summary judgment is appropriate if no material fact is in dispute and if reasonable persons could not draw differing inferences from the undisputed material facts).

¶ 45                                CONCLUSION

¶ 46    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 47    Affirmed.