2022 IL App (1st) 211150
No. 1-21-1150
Order filed September 26, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| MICHAEL HORBROOK, | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | |
| v. | No. 18 L 11681 |
| JESUS CONTRERAS AND MARIEL CONTRERAS, | The Honorable Lorna E. Propes, |
| Defendants-Appellees. | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  No genuine issue of material fact was presented, so summary judgment in favor of defendants was proper.

¶ 2    Comcast employee Michael Horbrook sued Jesus and Mariel Contreras for injuries he suffered while on a service call at their property. Horbrook fell while climbing over a fence to escape a dog that belonged to their daughter, a tenant.

¶ 3        In a six-count amended complaint, Horbrook alleged violations of the Animal Control Act and common law negligence. 510 ILCS 5/16 (West 2012). Counts I through IV named the Contrerases. Counts V and VI named their daughter Jessica.

¶ 4        The trial court granted the Contreras's motion for summary judgment as a matter of law. The trial court found no genuine issue of material fact existed for trial as the Contrerases did not "harbor" or claim ownership of the dog. (Counts V and VI against Jessica are not before us.)

¶ 5        We affirm, construing the pleadings, depositions, admissions, and affidavits strictly against the Contrerases and liberally in favor of Horbrook, we find there is no genuine issue of material fact regarding the dog's ownership that would either trigger the Animal Control Act or impose liability under a common law negligence theory.

¶ 6                                     Background

¶ 7        Comcast assigned Horbrook, one of its home cable installers, to make a service call at a six-unit apartment building owned by the Contrerases, who lived in a third-floor apartment. The five other units were rented; one of them to Jessica, their daughter. As part of her lease, the Contrerases allowed Jessica's dog to live on the premises even though the leases for the other units prohibited pets. Jessica owned the medium-sized dog for about 10 years. The Contreras's neighbors and tenants never complained about the dog.

¶ 8        When Horbrook answered a service call for a basement unit, he saw a dog barking in the fenced-in side yard. A "Beware of Dog" sign was posted on the gate. Jessica let Horbrook in the front door of the building and led him to the apartment listed for service.

¶ 9        Horbrook told Jessica that he would need to inspect the signal box in the backyard and asked her to "put up" the dog before he went outside. Jessica left, and when she returned, she told Horbrook that the dog was not in the backyard.

¶ 10        Horbrook went to the backyard and "looked around." He saw neither person nor dog there. As Horbrook knelt to check the signal, he heard a dog growling from the back of the yard by the alley. Horbrook ran towards the front gate. The dog barked and gave chase. Horbrook tried to jump the fence rather than open the gate. Horbrook did not recall how he got over the fence but remembered that his tool belt caught on the gate or the fence. He sustained injury when he fell on the other side. Horbrook could not recall if the dog touched him, but he was not bitten.

¶ 11        Hearing her dog barking, Jessica came out and told Horbrook that the dog "doesn't bite." The police were called and took statements from Horbrook and Jessica.

¶ 12        Horbrook sued, alleging violations of the Animal Control Act (510 ILCS 5/16 (West 2012)), and negligence. Counts I through IV named Jesus and Mariel Contreras as defendants. Horbrook claimed them liable for his physical and emotional injuries. Horbrook sought both medical costs and lost wages.

¶ 13        In a deposition, Contreras testified that until the lawsuit, he was unaware of the incident. Nor had he received complaints about the dog, including from other utilities, in the 10 years Jessica lived on the property with the dog. Contreras was unsure whether he or his wife were on the premises during the incident. He also testified that as part of the agreement for allowing the dog, Jessica had to clean up after the dog and not leave him unattended in the yard. The Contrerases would occasionally help Jessica by feeding or taking out the dog. They disclaimed ownership, however.

¶ 14        Horbrook asserted that the Contrerases assumed ownership of the dog with Jessica. See 510 ILCS 70/2.06 (West 2016) ( "owner" defined as "any person who*** (b) keeps or harbors an animal, (c) has an animal in his care, or (d) acts as custodian of an animal"). The Act holds an owner held liable if a dog "without provocation attacks, attempts to attack, or injures any person

who is peaceably conducting himself or herself in any place where he or she may lawfully be." See 510 ILCS 5/16 (West 2018). Horbrook contended that the Contrerases would take the dog outside and feed him when Jessica asked, which equated to "harboring" the dog. Horbrook also contended the Contrerases accepted some ownership rights over the dog because only Jessica's lease permitted a pet on the property, and the pet had unrestricted access to the backyard.

¶ 15        Following depositions, the Contrerases moved for summary judgment on Counts I - IV. See 735 ILCS 5/2-1005 (West 2020). In addition to restating facts that Horbrook presented in his complaint, the Contrerases urged that Holbrook could not show either of them present during the incident or that they owned or harbored a dog as defined by the Illinois Supreme Court.

¶ 16        The trial court held that Contreras and Mariel did not "harbor" or claim ownership of the dog, and as there was no genuine issue of material fact, granted summary judgment.

¶ 17                                    Analysis

¶ 18                              Standard of Review

¶ 19        We conduct a *de novo* review of the evidence in the record. *Duniver v. Clark Material Handling Co.*, 2021 IL App (1st) 200818, ¶ 12. We also consider the facts and law related to the case anew to determine whether the trial court correctly ruled. *Hermes v. Fisher*, 226 Ill. App.3d 820, 824 (1992).

¶ 20                              Summary Judgment

¶ 21        Summary judgment remains a drastic means of disposing of litigation that should be denied "unless the movant's right to judgment is clear and free from doubt." *Forsythe v. Clark USA, Inc.,* 224 Ill. 2d 274, 280 (2007). In reviewing a grant of summary judgment, we construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the

nonmoving party. *Williams v. Manchester,* 228 Ill.2d 404, 417 (2008). 735 ILCS 5/2-1005(c) (West 2012).

¶ 22                                   Illinois Animal Control Act

¶ 23        The Act requires a plaintiff to prove: " '(i) an injury caused by an animal owned by the defendant; (ii) lack of provocation; (iii) the peaceable conduct of the injured person; and (iv) the presence of the injured person in a place where he has a legal right to be.' " *Beggs v. Griffith*, 393 Ill. App. 3d 1050, 1054 (2009) (quoting *Meyer v. Naperville Manner, Inc.*, 262 Ill. App. 3d 141, 147 (1994) ).

¶ 24        Horbrook contends the Contrerases could reasonably be considered the dog's owners under the Act. 510 ILCS 5/2.16 (West 2020). Horbrook argues they occasionally fed and took him outside, demonstrating ownership and, thus, strictly liable under section 16 of the Act. Horbrook also contends he was injured without provocation on his part and legally entitled to be in the yard.

¶ 25        The Act defines "owner" as "any person having a right of property in an animal, or who keeps or harbors an animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog to remain on any premises occupied by him or her." 510 ILCS 5/2.16 (West 2020). Legal ownership alone is not always sufficient to impose liability under the Act. See *Hayes v. Adams*, 2013 IL App (2d) 120681, ¶ 20 (at time of injury defendant was not in position to control dog or prevent injury), and *Papesh v. Matesevac*, 223 Ill. App. 3d 189, 192 (1991) (legal owner not liable because dog no longer lived with her). While the Act fails to define "keeps" and "harbors," we give these concepts their plain and ordinary meaning. *Steinberg v. Petta*, 114 Ill. 2d 496, 500-01 (1986).

¶ 26        The term "owner" has been consistently construed to involve some measure of care, custody, or control. *Id.* at 501. In *Steinberg*, where one tenant's dog bit another tenant's child,

plaintiff sued the absentee landlord. The Illinois Supreme Court found that "simply allow[ing] tenants to have a pet on the premises" does not create an inference that the landlord could be deemed to have "harbored" or" kept" the animal under the Act. *Id.* at 502. Horbrook leans on the definitions laid out in *Steinberg* to support his argument that the Contrerases contact with the dog amounted to acting like owners. Horbrook argues that because the dog had been living with Jessica on the property for over a decade, and only Jessica had access to the backyard, the Contrerases maintained actual control over the dog the entire time.

¶ 27       But Illinois courts have held to the contrary: a landlord who permits a dog on their property cannot be considered a harborer or an owner. *Id.* at 502. See *Goennenwein by Goennenwein v. Rasof*, 296 Ill. App. 3d 650, 653-55 (1998) (landlord not liable where owner is on premises and in control of animal at time of attack). And Illinois courts have consistently held that a person's status as a harborer or keeper is dependent on control over the animal at the time of the injury. *Frost v. Robave, Inc.*, 296 Ill. App. 3d 528, 535 (1998).

¶ 28       Following this principle, even if the Contrerases could be considered the dog's occasional keeper when they took him outside, this responsibility ended each time they returned the dog to Jessica's apartment. *Frost*, 296 Ill.App.3d at 536. See *Steinberg,* 114 Ill. 2d at 502-03 (landlord not liable for injury caused by tenant's dog); *Papesh v. Matesevac,* 223 Ill. App. 3d 189, 191-92 (1991) (mother who purchased dog for son not liable for injuries after son and dog moved to father's home); *Hassell v. Wenglinski,* 243 Ill. App. 3d 398, 400, 402 (1993) (dog owner not liable for injuries to person walking dog as favor to owner); *Eyrich v. Johnson,* 279 Ill. App. 3d 1067, 1070 (1996) (owner of boar not liable for injury to farmhand whose job was care and feeding of boar); *Whitten v. Luck*, 2014 IL App (5th) 120513, ¶ 14 (landlord not liable for motorcyclist's injuries after tenant's dog ran out causing accident as landlord was not harboring dog).

¶ 29    Applying the Act's established interpretation to these facts, we conclude that the Contrerases did not "harbor" or "keep" the dog as a matter of law. While they occasionally, when Jessica asked, let the dog out or feed him, the record shows that they neither purchased anything for the dog nor cared for him regularly. Contreras said he was unsure whether he or his wife were home the day of the incident. Nor was he aware a tenant had scheduled a service call. Jessica let Horbrook into the building and told him the dog was no longer in the yard. She also responded to the barking and collected the dog after Horbrook fell over the fence. While the question of ownership is usually for the trier of fact (*Steinberg*, 114 Ill. 2d at 502), no genuine issue of material fact exists for trial.

¶ 30    Horbrook also claims that the Contrerases benefitted from the dog as a security or guard dog on the property. But Horbrook presented no evidence that the dog was ever trained or used in this capacity. A "Beware of Dog" sign carries no significance nor even indicates a dog's presence on property. Moreover, the Act places the burden of liability on the party who would be in the best position to prevent an animal from causing harm. *Papesh v. Matesevac*, 223 Ill. App 3d 189, 192 (1991). That excludes the Contrerases.

¶ 31                            Negligence

¶ 32    Horbrook contends that the Contrerases owe him a duty as an invitee on the property. To establish a cause of action for common law negligence requires: (i) the existence of a duty to use reasonable care owed by the defendant to the plaintiffs, (ii) a breach of that duty, and (iii) an injury proximately caused by that breach." *Tyrka v. Glenview Ridge Condominium Ass'n*, 2014 IL App (1st) 132762, ¶ 44. "The determination of the existence of a duty is a question of law to be resolved by the court." *McCoy ex rel. Jones v. Chicago Housing Authority*, 333 Ill. App. 3d 305, 308 (2002) (citing *Vesey v. Chicago Housing Authority,* 145 Ill.2d 404, 411 (1991).

¶ 33        Determining whether a breach of duty and whether that breach proximately caused Horbrook's injuries presents a matter for a jury *if* there had been a genuine issue of material fact. *Tyrka*, IL App (1st) 132762, ¶ 46. Nothing in the record indicates that the Contrerases owned the dog, so Horbrook cannot establish that the Contrerases had a duty to him as an invitee.

¶ 34        Additionally, when a common law negligence claim involves a dog, imposing liability on someone other than the owner requires the plaintiff to show proof that the defendant had prior knowledge of a dog's viciousness. *Lucas v. Kriska*, 168 Ill. App. 3d 317, 320 (1988).

¶ 35        Horbrook claims that facts "demonstrate [the dog] had a vicious and mischievous disposition, and that the [Contrerases] were negligent in failing to warn [him] about [the dog's] temperament." But, Horbrook neglects to identify even a single fact or provide any evidence or testimony in this regard or as to the dog's use for security. Instead, he argues that the dog provided the Contrerases a measure of protection, like the former police dog in *Gerulis v. Luneki*, found to have "vicious propensities" and "kept by the defendant for the purpose of protecting his property against thieves and intruders." *Gerulis v. Luneki*, 248 Ill. App. 44, 45-46 (1936). Horbrook cites a Nevada case where a dog escaped the yard and attacked a child on the sidewalk. *Wright v. Schum*, 106 Nev.611 (1989). But, as the Contrerases argued, nothing in the record indicates a prior attack, complaint, or other behavior that would put them on notice that the dog had dangerous or aggressive propensities. Barking alone does not serve as evidence of a vicious dog. See 510 ILCS 5/2.19b (West 2020) (" 'Vicious dog' means a dog that, without justification, attacks a person and causes serious physical injury or death or any individual dog that has been found to be a 'dangerous dog' upon 3 separate occasions."). More significantly, Horbrook has not established that the Contrerases had a duty to him.

¶ 36        Affirmed.